ARTHUR E. MCCAULEY V. STATE OF NEBRASKA.

FILED NOVEMBER 17, 1932. No. 28350.

*Hugh J. Boyle,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Irvin Stalmaster, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This was a trial to the district judge for contempt of court, and the defendant was found guilty, and sentenced to serve a term of six months in the county jail of Holt county and to pay a fine of $250.

Upon December 24, 1931, an information was filed in the district court for Holt county by the county attorney, charging Arthur E. McCauley with contempt of court, in that he approached George Gilman, one of the jurors then engaged in the trial in the district court in the case of State of Nebraska v. John M. Flannigan and James C. Flannigan, and said to him: "Well, you fellows are about through up there. If this jury is hung and you come up to my office in Atkinson there will be $50 in it for you." It is further charged in the information that said conversation was then and there wilfully intended to influence the action, judgment and decision of said juror, George Gilman, and was a wilful attempt to obstruct said proceedings and a wilful attempt to hinder the due administration of justice, and was a contempt of the said district court. Upon this an order was issued by the district judge, under which an attachment for contempt was issued by the clerk of the court to the sheriff, directing that the defendant be brought into court. An answer was filed by the defendant, admitting that George Gilman was a member of the jury, as alleged, and denying all other allegations.

Upon January 2, 1932, the defendant was duly arraigned, and entered his plea of not guilty, the defendant being present in court and appearing by M. F. Harrington, his attorney, and the state being represented by Julius D. Cronin, county attorney.

At the trial, George Gilman, the juror, being the first witness called by the state, testified that he had known Mr. McCauley by sight for a good many years, and met him about 5 o'clock, after the jury had been discharged for the day, in front of the Medlen butcher shop, and that the conversation occurred, as charged in the information, to the effect that he would give the juror $50 at his place of business in Atkinson if the Flannigans were acquitted. That in reply to this offer on the part of the defendant, he testified: "I told him to go to hell, and went on into the butcher shop." The defendant denied that he had ever spoken to Juror Gilman in his life, although he was acquainted with his brothers. The defense rested largely upon an alibi, and the defendant testified that he attended the trial of the Flannigans, and that court adjourned, on the evening of December 17, about 4:10, and that he and his wife, upon leaving the courtroom, separated, and that he immediately drove to Atkinson with one Thomas Donlin, and that by 5 o'clock, the time it was charged the offense was committed, he was in Atkinson, and not in O'Neill. That he left O'Neill within 15 minutes after court adjourned, and arrived there about 5 o'clock, and went into his restaurant, which is a small place, having nine stools, and talked to his partner, Alvin Heying. That he went there to get some one to take his place in the restaurant that evening, as he wanted to be free to accept an invitation to go to Judge Harrington's for supper at 6 o'clock in O'Neill. That he left Atkinson again at 20 minutes to 6, and drove right back to O'Neill with Thomas Donlin, reaching there about 6:15 and parking the car right in front of Judge Harrington's office. That he got his wife from Helen's Hat Shop, where she had been waiting, and, with Judge Harrington, walked to the judge's

home. The following witnesses, his wife, Mrs. Arthur E. McCauley, Thomas Donlin, High Nightengale, Charles Davis, Clarence Sauser and Alvin Heying, each were called by the defendant in his behalf, and testified in support of this alibi.

J. J. Harrington testified that he asked for an adjournment of the Flannigan case at about 4:10 on the afternoon of December 17, on account of lack of witnesses, and that Judge Dickson desired to run until 5 o'clock, but finally consented to take a recess about 4:10. He testified that Mr. and Mrs. McCauley had dinner that evening at his home and they played pitch for a while.

After several witnesses had been called by each side, both the defendant and the state rested. Arguments were made to the court, and the case was continued for further proceedings. Upon January 4, 1932, the court, after due consideration, found the defendant guilty, as charged, and continued said cause for sentence.

On January 5, 1932, the defendant filed a motion for new trial, setting out six alleged errors. Upon January 22, 1932, cause came on for hearing upon the motion for new trial filed by the defendant and the affidavits in support thereof, and the county attorney desiring to reopen the case and submit further testimony, the court found that the defendant's motion for new trial should be sustained, and so ordered. Whereupon, further testimony was heard on behalf of the defendant and the state, and each party rested. Thereafter the defendant asked leave to withdraw his rest and offer exhibit 2, which was allowed. The case being submitted to the court upon the information, pleadings, and all of the evidence, the court found the defendant guilty of contempt of court. Thereupon, the defendant filed a motion for new trial, being the same and identical six grounds set out in the motion for new trial filed January 5. The second motion for new trial being overruled, defendant was sentenced to the county jail of Holt county for six months and to pay a fine of $250. Upon January 25, 1932, a writ of error was allowed by

the district judge, bond of $1,000 filed, and sentence suspended pending appeal to this court.

The second motion for new trial set out only these assignments of error: That the finding of the court that the defendant was guilty was not sustained by sufficient evidence; was contrary to the evidence; was contrary to the law; that the defendant should have been found not guilty; for errors excepted to during the trial; and set out no other assignments of error. However, in the argument it is insisted that, when the first motion for a new trial was sustained upon January 22, and additional evidence taken, consisting of 36 pages, being the evidence of four witnesses called by the state, four witnesses called by the defense, and one called by the court, it was not sufficient to sustain the conviction of the defendant, being clearly supplementary to the evidence taken at the first hearing.

It is perfectly clear, from a reading of the evidence and the record, that the case was opened up for the introduction of additional evidence on each side, and that it was understood between the attorneys and the court that all of the evidence taken at the trial upon January 2 and the additional evidence taken upon January 22 should be considered by the court in arriving at a decision in the case, the conduct and record of both parties being the same as if they had withdrawn their respective rests and been given the right to add more testimony.

In examining this bill of exceptions, prepared by direction of defendant's counsel, we find that it embraces all of the evidence taken upon both days, and not simply that taken on the last day, after the motion for new trial was sustained. This complete bill of exceptions was submitted to the county attorney of Holt county as defendant's bill of exceptions, and, in allowing the bill of exceptions, the judge of the district court attached his certificate thereto, stating that he had examined the above and foregoing bill of exceptions, and, as a part of the certificate, we find this statement of the trial judge: "I further certify that the finding of the defendant, Arthur E. McCauley, guilty of

contempt of court on the 22d day of January, 1932, was based upon the entire evidence taken in the case; both the evidence submitted by both sides at the hearing commencing January 2, 1932, and the additional hearing on January 22, 1932, and that this cause was submitted upon said entire evidence, and not upon the additional testimony taken on January 22, 1932;" and under this statement the court approved the bill of exceptions upon March 19, 1932. No objection was made to this statement in the certificate by the defendant's counsel.

A proceeding against a party for contempt in this state is in the nature of a criminal prosecution, and is governed by the rules of construction and practice applicable thereto. *Connell v. State,* 80 Neb. 296. And a judgment for contempt is reviewed on error in the same manner as criminal cases. *Zimmerman v. State,* 46 Neb. 13.

In the federal court it has been held that one may be held for contempt for communications with jurors, and it is not necessary to prove that the communications had, or acts done, were accompanied by a wrongful intent, it being sufficient if they would have a tendency to improperly affect the action of the jury. *Kelly v. United States,* 250 Fed. 947.

In a Kentucky case, the defendant, charged with misdemeanor, approached a member of the petit jury for the term during which he was to be tried and offered to pay him a certain sum if he would qualify as a juror in his case and hang the jury, and he was held guilty of criminal contempt. *Mitchell v. Commonwealth,* 206 Ky. 634.

In an Iowa case, a juror during a trial drank in a saloon with the brother of the defendant and one of his witnesses, and on examination on *voir dire* had falsely said he had expressed no opinion on the case. It was held that the court did not exceed its rightful powers in adjudging said juror to be in contempt of court, for trial courts are charged with the duty and necessity of guarding their proceedings against everything which interferes with the due and orderly administration of justice. *Murphy v. Wright,* 167 Ia. 75.

In a Nebraska case, where an interested party invited a juror to meet him at the Paddock hotel in Beatrice that evening, and then took him to a saloon and attempted to find out how he stood in the case, whereupon the juror told him to "cut it out," it was held that even this inquiry was contempt of court, and the wrong-doer was punished. *Emery v. State,* 78 Neb. 547, 9 L. R. A. n. s. 1124.

And one has been held guilty of contempt for telling a juror on the street that he did not believe the testimony of certain witnesses called in the case. *State v. Brewer,* 1 W. W. Harr. (Del.) 363. And courts have even gone so far as to hold that approaching a venireman and expressing sympathy for the defendant's family, and also when a person expressed an opinion as to the defendant's guilt, such person could be held guilty of contempt. *State v. Broxson,* 163 La. 94.

In the case of *Sinclair v. United States,* 279 U. S. 749, 63 A. L. R. 1258, the United States supreme court affirmed the conviction for contempt where the act consisted simply in hiring 15 operatives of the Burns International Detective Agency to shadow the jurors in the case of United States v. Harry F. Sinclair and Albert B. Fall, and where none of the detectives approached or communicated with a juror, or attempted to do so, and even though no juror may have been conscious of being under observation.

Section 29-2308, Comp. St. 1929, provides, among other things: "No judgment shall be set aside, or new trial granted, or judgment rendered, in any criminal case on the grounds of misdirection of the jury, or the improper admission, or rejection of evidence, or for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." And while the record may not be as full and complete as might be desired, to show the exact procedure followed in the case, yet no question is raised in the motion for new trial relating thereto, and we are convinced that no substantial miscarriage of justice has actually occurred.

It is provided in section 20-2121, Comp. St. 1929, that any wilful attempt to obstruct the proceedings of courts, or hinder the due administration of justice, is a criminal contempt, and may be punished by fine and imprisonment. The trial court saw the witnesses who attempted to substantiate the alibi of the defendant, he noted their demeanor and conduct under direct and cross-examination, and rejected their evidence. He was in a better position to judge of their credibility than this court.

We have carefully considered the sentence meted out to the defendant; the jail sentence is the same as that given to Sinclair in the case hereinabove discussed. Justice McReynolds, in closing his opinion in that case, said: "Considering the whole record, we think appellants had a patient hearing upon adequately defined issues, with abundant opportunity to put forward all proper defenses and explanations. * * * The punishments imposed are not excessive; the court kept within the limits of its reasonable discretion and did nothing which injuriously affected the substantial rights of the parties."

As the attempt of the defendant to bribe the juror had no effect upon the juror, who respected his oath and intended to carry it out, it might be argued that the sentence was rather severe, but the success or failure of a criminal undertaking of this kind has nothing to do with the question of guilt or of punishment. This court is not disposed to interfere too much with trial judges who do all in their power to keep sources of justice pure, and in seeing to it that trials before them are conducted in orderly and proper manner, the offense of tampering with a juror should not be lightly passed over, or regarded as of little moment, and all judges must protect the dignity of their courts. We therefore affirm the judgment and sentence of the trial court.

AFFIRMED.