L. S. "Bob" Cornett, plaintiff in error, v. State of Nebraska, defendant in error.

53 N. W. 2d 747

Filed June 6, 1952.   No. 33137.

*Eugene D. O'Sullivan, Eugene D. O'Sullivan, Jr., Warren C. Schrempp, David S. Lathrop,* and *Ernest S. Priesman,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *William T. Gleeson,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

Defendant was proceeded against for a constructive criminal contempt. The trial court found the defendant guilty and sentenced him to serve 60 days in the Douglas County jail and pay a fine of $1,000 and costs. Defendant seeks a review in this court by petition in error.

Defendant is a professional bondsman at Omaha, Nebraska. This proceeding grew out of the following state of facts: One Dwight Miller, Jr., a resident of Council Bluffs, Iowa, was charged with the commission of the crime of grand larceny in Douglas County, Nebraska. He was arrested in Council Bluffs on August 29, 1951, and immediately admitted his guilt. He waived extradition and was removed to Douglas County, Nebraska, where he expressed a desire to plead guilty. An information was thereupon filed in the district court for Douglas County on August 30, 1951, but defendant, being apprised of his rights by the assistant public defender of Douglas County and after consultation with his wife and parents, decided not to plead guilty immediately and sought his release on bond. The parents of Dwight Miller, Jr., Mr. and Mrs. Dwight Miller, Sr., also being residents of the State of Iowa and owning no property within the State of Nebraska, were advised

that the defendant, Bob Cornett, would be the "best bet" for obtaining an appearance bond. They, together with the wife of Dwight Miller, Jr., thereupon contacted the defendant and entered into negotiations and agreements with him out of which the present charge of constructive criminal contempt arose.

The evidence shows that Mr. and Mrs. Dwight Miller, Sr., called at defendant's office on the same day but were advised that defendant was out and would not return until the next morning. They had learned that the appearance bond had been fixed at $5,000 and that defendant charged $10 per $100 for furnishing an appearance bond. They offered to leave $500 with one George Vanous with whom they talked at defendant's office. He refused to accept it and advised them to see the defendant at 8:30 a. m. the next day. The wife and parents of Dwight Miller, Jr., came to defendant's office the next morning. Defendant inquired about the case, whether or not Miller had pleaded guilty, and impressed them with the seriousness of the situation. He advised them that he would see what could be done and that they should return to his office at 11:30 a. m. On their return to the office they were advised by defendant that he could "take care of the case," that the expense would be "about a thousand dollars," and that he could get Dwight Miller, Jr., out of jail "with no strings attached" for the above-named sum. Dwight Miller, Sr., thereupon paid defendant $500 in cash and agreed to pay a further sum of $500 within a few days. Defendant then advised the Millers to keep quiet about the transaction and to talk to no one. He advised them also to inform Dwight Miller, Jr., that he should "keep his mouth shut and just tell only his name." The record shows also that defendant visited Dwight Miller, Jr., in the city jail, discussed the case and informed him that "it would cost a lot of money," and that he was not to talk to anybody unless he sent them up to see him. Defendant thereupon engaged one Philip Abboud, an attorney, to

represent Dwight Miller, Jr. On September 1, 1951, Dwight Miller, Jr., upon the advice of Abboud, entered a plea of guilty to the charge of grand larceny. Sentence was deferred. The parole officer investigated the case and reported to the court. On September 12, 1951, the district court for Douglas County suspended sentence and paroled Dwight Miller, Jr. After meticulously pleading the foregoing facts in Count One of the information, the concluding paragraph thereof states: "That the said defendant, L. S. 'BOB' CORNETT, is not licensed or authorized to practice law in the State of Nebraska; that such conduct by the said defendant, L. S. 'BOB' CORNETT, constitutes the practice of law in the State of Nebraska and is illegal and was and is a hindrance to the administration of justice in proceedings had or proceedings pending before the courts of this state; and that by reason of the foregoing the said defendant, L. S. 'BOB' CORNETT, is in contempt of court." The second count of the information was dismissed by the State and consequently presents no issue here.

The defendant has set out numerous alleged errors in bringing the case here for review. We think, however, that they involve essentially three questions. Did the court have jurisdiction of the action? Is the information sufficient to state a cause of action against the defendant? Is the evidence sufficient to sustain the judgment of the trial court?

It is the contention of the defendant that the information charges him with a constructive criminal contempt in that he was practicing law without a license to do so and that such an offense is within the exclusive jurisdiction of the Supreme Court of this state. It cannot be questioned that the Supreme Court has the exclusive power to determine the qualifications of persons who may be permitted to practice law in this state and possesses the exclusive power to disbar licensed attorneys who have violated the trust reposed in them as such. It also has the inherent power to punish by

contempt proceedings those persons who engage in the practice of law without a license to do so. Where the Legislature has not made the unauthorized practice of law a statutory crime, the Supreme Court has the exclusive power to punish those who practice law without a license. This is so because the contempt is directed at the court having the exclusive power to define the practice of law, to determine the qualifications of persons to be admitted to the practice of law, and to disbar those admitted to the practice of law who have violated their trust. These conclusions are supported by the following cases: State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N. W. 95; State ex rel. Wright v. Barlow, 132 Neb. 166, 271 N. W. 282; In re Integration of Nebraska State Bar Assn., 133 Neb. 283, 275 N. W. 265, 114 A. L. R. 151; State ex rel. Wright v. Hinckle, 137 Neb. 735, 291 N. W. 68; State ex rel. Johnson v. Childe, 139 Neb. 91, 295 N. W. 381; State ex rel. Johnson v. Childe, 147 Neb. 527, 23 N. W. 2d 720. In the last case cited this court specifically held: "The power to define what constitutes the practice of law is lodged with this court. The sole power to punish any person assuming to practice law within this state without having been licensed to do so also rests with this court."

We necessarily hold that the district court for Douglas County was without jurisdiction to try the defendant on the charge of committing a constructive criminal contempt by engaging in the practice of law without having been licensed to do so.

The Attorney General insists, however, that the information before us charged not only that defendant was practicing law without a license, but that, in addition thereto, defendant's conduct "was and is a hindrance to the administration of justice in proceedings had or proceedings pending before the courts of this state." It will be noted from the paragraph of the information from which this allegation is taken, which paragraph is hereinbefore quoted, that the contempt charged is

practicing law without a license and the hindrance of the administration of justice. The two allegations alleged to constitute criminal contempt are in the conjunctive, and either, if established, under the circumstances here shown is sufficient to sustain the charge if made in a court having jurisdiction. The fact that the district court may not have had jurisdiction to try the one does not deprive it of its jurisdiction to try the other. If the conduct charged is contemptuous of the district court and of the Supreme Court at the same time, the wrongdoer may be proceeded against in the district court for so much of the conduct that constitutes a constructive contempt of the district court. This is so even if both contempts are charged. The information may be subject to a proper motion or plea, but otherwise the allegations or conclusions charging a constructive contempt over which the Supreme Court has exclusive jurisdiction will be treated as surplusage when no prejudice results. This whole question, we think, is controlled by the reasoning in Blodgett v. State, 50 Neb. 121, 69 N. W. 751, wherein it is said: "Much has been said in argument respecting the joinder of the proceeding for disbarment with the prosecution for contempt. We are, however, unable to perceive any substantial objection to the practice complained of. There was, it should be observed, no motion or request for an order requiring the county attorney to elect between the two counts of the information. Where two or more distinct felonies, arising out of different transactions, are charged in the same indictment or information, the prosecutor will, on motion of the accused, be required to elect upon which he will proceed. * * * But the information in this case is, we think, free from the vice imputed to it. Where different criminal acts constitute parts of the same transaction, they may be joined in the same indictment or count thereof. * * * But, in general, unnecessary averments in an indictment or information 'may be treated as mere waste material,

to pass unnoticed, and having no legal effect whatever.' (1 Bishop, Criminal Procedure, sec. 478.) The test by which to determine the sufficiency of an indictment is 'whether enough remains after the rejection of all redundant matter to satisfy the requirement of the law.' And the remedy of the accused is, in every such case, by plea, and not by motion to strike the unnecessary averments."

The record does not disclose that any prejudice resulted to the defendant. In the oral arguments of defendant's motion to quash the information, which were made a part of the record at the instance of the defendant, the prosecution contended that a charge of criminal contempt, in that defendant's conduct was and is a hindrance to the administration of justice, was included in Count One of the information. The court, in ruling on the motion to quash, made it clear as shown by the record that such charge was included. Defendant was fully advised of this fact before the case went to trial. He filed an answer. At the close of the State's evidence defendant moved for a dismissal of the case, which was denied. Defendant elected not to offer evidence, and stood upon the record. The motion to dismiss and the motion to quash were thereupon renewed and overruled. The record thus made fails to show affirmatively that defendant was prejudiced; in fact it shows affirmatively that he was not.

It is urged that the information is fatally defective in failing to allege that the conduct complained of was willful. A contempt proceeding is sui generis and, while it partakes of the nature of a criminal proceeding, it is neither criminal nor civil. A contempt should be charged with the particularity of a criminal complaint. In the instant case the facts are meticulously pleaded in detail. The word "willful" is not used, but the recitals of the information show clearly that it was willful. This is all that is required in a constructive criminal contempt. Nebraska Children's Home Society v. State,

57 Neb. 765, 78 N. W. 267; Kammer v. State, 105 Neb. 224, 180 N. W. 39.

It is contended that the court, in issuing an order to show cause, thereby shifted the burden of proof to the defendant. There is no merit to this contention. Whatever method may have been used in obtaining jurisdiction of the person of the defendant, the burden of proof was upon the State to prove its case beyond a reasonable doubt. The trial court recognized and applied this rule.

Defendant argues that the information is fatally deficient in that it fails to specify the court toward which the contemptuous conduct was directed by using the words "was and is a hindrance to the administration of justice in proceedings had or proceedings pending before the courts of this state." There can be no doubt that a proceeding for a constructive contempt must be instituted in the court toward which the contempt is directed. The quoted allegation of the information, standing alone, would not be within the rule. But other portions of the information clearly show that Dwight Miller, Jr., was charged with the crime of grand larceny in the district court for Douglas County. He was arraigned, pleaded guilty, and was paroled by that court according to the information itself. Every act of the defendant had to do with the disposition of the case by the district court for Douglas County and the information so shows. That the alleged contempt was directed toward the district court for Douglas County is sufficiently pleaded in the information, although the conclusion drawn in the last paragraph of Count One is somewhat deficient in that respect. The irregularity, if it may be classed as one, appears to be controlled by the provisions of section 29-1501, R. R. S. 1943. The record clearly shows that no prejudice resulted from the claimed error. Kirchman v. State, 122 Neb. 624, 241 N. W. 100.

The charge contained in the information over which the district court for Douglas County had jurisdiction

was that the conduct of the defendant was and is a hindrance to the administration of justice in proceedings had or proceedings pending before the courts of this state. This is almost identical with subdivision (4) of section 25-2121, R. R. S. 1943, whereby the Legislature defined and enumerated contempts of court which could be punished in courts of record. While this statute is merely declaratory of powers that inhere in the courts and which exist irrespective of statute, nevertheless it is a clear indication that the Legislature as well as the courts consider the hindrance of the due administration of justice as contemptuous. Defendant argues, however, that he did not hinder justice. He claims his acts, if anything, speeded up justice; that in a matter of four days Dwight Miller, Jr., pleaded guilty and within two weeks thereafter he was paroled. The argument completely overlooks the real meaning of the term to "hinder the due administration of justice" which a court of record may properly punish.

The evidence in this case shows that the Millers called at the office of the defendant to procure an appearance bond for Dwight Miller, Jr., which they had learned would cost $500. They had $500 with them. Defendant was not in and they were required to return early the next morning. Defendant made inquiry about the case, the past record of Dwight Miller, Jr., and advised that he would investigate and give his answer at a later hour that morning. At the appointed time defendant stated that he could take over the case, that the expense would be about $1,000, and that he would get Dwight Miller, Jr., out of jail with no strings attached. He accepted $500 in cash, and the Millers agreed to pay another $500 within a few days. Defendant admonished the Millers to keep quiet about the whole transaction and to advise Dwight Miller, Jr., to do likewise. No discussion about an appearance bond appears to have been had on the latter occasion and the defendant never at any time furnished an appearance

bond. The defendant did not tell the Millers how he would get Dwight Miller, Jr., out of jail with no strings attached. The record clearly shows that he led the Millers to believe that he had influence with the right persons, or that in some mysterious manner he could use the $1,000 to pay expenses in securing the release of Dwight Miller, Jr., with no strings attached. The information in the present case was filed on September 11, 1951. On September 12, 1951, defendant returned the $500 to the Millers. The defendant contends that this evidence, even if true, does not hinder the administration of justice. We think it does.

The rule is that one who, for the purpose of securing money for himself, falsely pretends or insinuates to another who is interested in the litigation that he can corruptly influence the course of the suit by approaching officers of the court with money or anything of value, is guilty of a contempt of the court toward which it is directed. Its deliberate purpose is to create in the mind of the hearer a belief that courts or the officers thereof are dishonest and that justice can be bought if the right contacts are made. Such conduct is calculated to hinder and obstruct the due administration of justice and its effect is to lessen the authority, dignity, and integrity of courts generally, and particularly the one toward which it is directed. Little v. State, 90 Ind. 338, 46 Am. R. 224; Ex Parte John D. Crews, 127 Fla. 381, 173 S. 275. In the rehearing of the latter case it was said: "The alleged conduct was calculated to destroy all respect for the court and whether or not it actually impeded justice is immaterial." 127 Fla. 391, 173 S. 279. See, also, Sinclair v. United States, 279 U. S. 749, 49 S. Ct. 471, 73 L. Ed. 938, 63 A. L. R. 1258; Toledo Newspaper Co. v. United States, 247 U. S. 402, 38 S. Ct. 560, 62 L. Ed. 1186.

The evidence is sufficient to sustain the findings and judgment of the court under the required quantum of proof. The contempt is a most pernicious one and the

trial court was justified in imposing the judgment it did to vindicate the dignity and majesty of the court and to preserve its authority and integrity.

Lastly, the defendant asserts that the proceedings had in the district court are violative of defendant's rights under Article 1, section 3, and Article 1, section 11, of the Constitution of Nebraska, and Article 14, section 1, of the Constitution of the United States. The foregoing are generally referred to as the due process provisions of the state and federal Constitutions. On this subject the facts are: An information was filed in a court having jurisdiction to hear it. It properly charged the defendant with a constructive criminal contempt which was within the power of the court to hear. The defendant was served with process and he procured the assistance of able counsel. Defendant filed an answer. All of the evidence was by witnesses who personally appeared and testified. They were cross-examined at length. The defendant elected to adduce no evidence as he had a right to do. The evidence sustains the findings and judgment of the trial court. To us this is due process, not the want of it.

AFFIRMED.