SASTO BATTANI, petitioner, v. HON. HARRY GRUND, Judge of Des Moines Municipal Court, respondent.

No. 48132.

(Reported in 56 N.W.2d 166)

624

DECEMBER 16, 1952.

REHEARING DENIED MARCH 13, 1953.

Royal & Royal, of Des Moines, for petitioner.

Clyde E. Herring, County Attorney, and John E. Sarbaugh, Assistant County Attorney, for respondent.

THOMPSON, J.—On March 13, 1952, an application for a rule to show cause was filed in the municipal court of the City of Des Moines, of which the respondent was the presiding judge. It was alleged the petitioner, Sasto Battani, had illegally resisted an order or process of the court and was guilty of contempt as defined in chapter 665 of the Code of 1950. We assume the specific section which it was claimed was violated is section 665.2, subsection 3, which defines as a contempt, "Illegal resistance to any order or process made or issued by it ["it" being a "court" as defined by section 665.1].".

The rule issued as prayed, and on April 1, 1952, the petitioner herein, who was the alleged contemnor, filed his resistance in two parts. Part I pleaded there was no contempt because "the search warrant upon which the contempt charge was based was invalid and of no force and effect and all acts thereunder were illegal and void because said search warrant was based on an information which was not on file as required by law at the time said search warrant was allegedly issued."

Part II raised a fact question, denying that the alleged contemnor committed the acts set out in the application for the rule.

Upon these issues the matter went to trial before the respondent on April 1, 1952, and on April 3, 1952, he made his findings of fact and conclusions of law, determining Battani was guilty of contempt. On April 11 following respondent sentenced Battani to six months confinement in the Polk County jail, and to pay costs; and to review this judgment petitioner brings certiorari. He presents four propositions relied upon for sustaining the writ. We shall discuss them in order, with a recital

of the material facts bearing upon each ground under consideration.

I. The first proposition relied upon by petitioner is the same pleaded in Part I of his resistance and set out above. It constitutes what is perhaps his major challenge to the proceeding. As a preliminary to determining it some reference should be made to the material facts which bear upon the question of the filing of the information.

On February 28, 1952, one B. A. Grossnickle, a constable of Allen Township in Polk County, swore to an information for a search warrant before the respondent. It is not contended there was any irregularity in the information or in the finding of probable cause. A search warrant was issued by respondent for the premises occupied by the petitioner, on the same date. Grossnickle took both the warrant and the information away with him. He did not serve the search warrant issued on February 28, but on March 7 returned to respondent, again presented the information, and received another warrant, which he executed on March 9. It was for alleged resistance to the service of this second process that petitioner was cited and adjudged guilty of contempt.

Section 751.4 of the Code of 1950, so far as material to our inquiry, is here set out:

"Any credible resident of this state may make application for the issuance of a search warrant by filing before any magistrate, except a judge of the supreme court, a written information, supported by his oath or affirmation, and alleging therein the existence of any ground or grounds specified in this chapter as ground for the issuance of a search warrant and that he believes and has substantial reason to believe that said ground or grounds exist in fact."

It is petitioner's contention the information was not filed before the issuance of the search warrant, that the warrant was therefore void, and so any resistance to it was not a contempt. If all of these matters appear, he is correct. But we think that whether the information was actually filed—a mixed question of law and of fact—must be determined against the petitioner; and if this were not so, we have held that the failure

to file the information is a mere irregularity, which does not make the warrant void, and does not protect one who resists its execution. In Burtch v. Zeuch, 200 Iowa 49, 56, 202 N.W. 542, 544, 39 A. L. R. 1349, 1354, it was likewise claimed that the information for the search warrant was not filed before the warrant was issued. Other questions were raised. After holding there was sufficient showing of probable cause, this court said of the issue of failure to file and the other matters urged by petitioner therein:

"At most, these objections constitute an attack upon the regularity of the information and warrant. It is elementary that disobedience of an order or process made by a court within its jurisdiction and power is a contempt, although the order or process may be irregular or irregularly issued. * * * The information and search warrant were prima facie regular and valid."

This is a direct holding that failure to file the information is, at most, an irregularity and does not make the search warrant issued upon it void.

Also the respondent found there had been a sufficient filing. Grossnickle, as a witness, testified he had the information in his possession from the time the judge (respondent) signed it until he filed it with the clerk of the municipal court on March 10, the day after the warrant was served. He said: "I didn't leave it with the judge. I had orders from the judge to keep it." Respondent, during the course of the contempt hearing, evidenced his intent in the matter by saying: "The minute it was signed by the court it was filed with the court, although the court did not have possession of it." And again: "At the same time it was practically filed by the court, although the court turned it back to Mr. Grossnickle." In his findings of fact and conclusions of law, after referring to State v. John Doe, 227 Iowa 1215, 1218, 290 N.W. 518, 521, respondent said:

"It has been a practice with the courts to sign an information and search warrant and allow the officer to hold the same without filing with the clerk. I presume that this practice is to insure that there will be no leaks."

In State v. John Doe, supra, to which respondent referred, we held that a search warrant might be legally issued before the filing of the information with the clerk of the court; that it is sufficient the information be filed before a magistrate, and *"such filing would be sufficient whether or not marked filed."* (Italics ours.)

At common law and under the Constitution of the United States, a search warrant may be issued upon probable cause shown by oath or affirmation. Our statute, section 751.4, supra, goes a step further and requires that a *written information* must be filed. We think the emphasis is upon the writing rather than upon the filing. It was the evident primary purpose of the legislature to insure that the magistrate should have before him a writing, showing under oath that there was probable cause for the issuance of the process. A "filing" is a most informal procedure. The paper "filed" need not be so stamped. State v. John Doe, supra. Nor need it be retained by the magistrate; it is sufficient if it be presented to him for the purpose of filing and he may immediately return it to the party who has delivered it to him, without affecting its validity. This is true, even though it be a misfeasance on the part of the magistrate to permit the paper to leave his possession (although we do not hold that it was such in this case). If the search warrant is once legally issued surely it cannot be affected by what happens to the information afterward so far as the validity of the warrant is concerned.

The petitioner relies heavily upon Thompson v. State, 190 Ind. 363, 130 N. E. 412. This case supports his position, but we think it far overborne by authority to the contrary, and that any weight it might have is diminished to the vanishing point by later cases in the Indiana court itself. Thus in Mowlan v. State, 197 Ind. 517, 521, 151 N. E. 416, 417, a case in which the affidavit (or information) was removed from the office of the magistrate, it was said:

"Same should have been kept on file by him, *but this irregularity did not make the search warrant and search thereunder invalid. It is not claimed by appellant that he was*

*harmed by the removal of the affidavit from the office of the justice of the peace."* (Italics ours.)

Still later, in Goodman v. State, 201 Ind. 189, 165 N.E. 755, 756, the same court was again confronted with a claim that the affidavit had not been filed. In that case the affidavit had been placed in the hands of the justice of the peace, marked "filed", and a search warrant had been issued. The justice permitted the police officer to take the affidavit away with him. The situation is closely parallel to the one we now have before us. It is true that in the instant case the respondent did not mark the information "filed", but we have held the filing mark or stamp is not necessary; there may be a filing without it, as we have pointed out above. The Indiana court in the Goodman case upheld the validity of the search, pointing out that the affidavit was filed when it was delivered to the proper officer for that purpose; that there was no claim the appellant had been in any way injured by the removal of the affidavit, and such removal did not make the warrant invalid.

To the same effect is Gallagher v. Linwood, 30 N. M. 211, 231 P. 627, 630, 37 A. L. R. 664. In State v. Innocenti, 170 Wash. 286, 16 P.2d 439, 441, it was held, in circumstances identical with those in the case at bar, there was a sufficient filing, and the fact that the officer who presented the complaint was permitted to take it away with him after securing the search warrant in no manner affected the validity of the latter instrument. The Washington Supreme Court stressed the rule that a paper is filed when it is delivered to the proper officer to be filed, there is no requirement it remain on file, there was no showing any injury had been done to the appellant, and no irregularity, if such it was, in permitting removal of the complaint from the office of the justice of the peace would invalidate the warrant. Petitioner attempts to distinguish this case by alleging the Washington court said in its opinion that there was no statute in that state requiring filing. Counsel is in error. The Washington court said only that there was no statute there which required the complaint to remain in the actual custody of the justice of the peace at all times; a much different statement than the one counsel attributes to it. In fact, the opinion dis-

630

cusses the matter of filing, assuming at all points that it was a requirement of Washington law. No valid distinction appears.

The same contention of failure to file the information was raised in Critelli v. Tidrick, 244 Iowa 462, 56 N.W.2d 159. There Justice Bliss, for the court, analyzed the authorities bearing upon the question, particularly those dealing with the distinction between void and merely irregular orders. We reached the same conclusion in the Critelli case as in the one here under consideration.

It is true that whether a paper has been filed, under the circumstances shown here, is a question of fact. That the information was not marked "filed", that it was retained only briefly by the magistrate, and that it was taken away by Grossnickle and not filed in the office of the clerk of the court until after the search warrant was served, are all matters to be considered as bearing upon that issue. We have pointed out that the court considered it was filed, in effect, by its presentation to him, his possession of it, albeit for a brief time only, and his direction to the constable to take it away with him. It was the respondent's duty to file it, and in the absence of countervailing evidence we must presume that he did so. In Burtch v. Zeuch, supra, we said at page 55 of 200 Iowa, page 544 of 202 N.W., page 1353 of 39 A. L. R.:

"We will not presume that the issuing magistrate failed to respect constitutional and statutory provisions. On the contrary, we recognize the presumption that sworn public officials, in the performance of their duties, have legally acted, in the absence of evidence to the contrary. The law presumes the regularity of official acts * * *."

The only evidence here from which any inference of nonfiling could be drawn is that the information was not marked "filed" and was taken away by Grossnickle. It is insufficient to overcome the presumption of regularity and the evidence supporting the finding that there was an actual filing within the requirement of the statute. We have also pointed out that under no circumstances could there be more than an irregularity, which would not invalidate the search warrant. While we do not com-

°mend the procedure adopted, we find no merit in the first assigned proposition for sustaining the writ.

■■ II. The next proposition urged on behalf of petitioner is that his guilt was not established by that clear and satisfactory evidence which the law requires. We have held that upon certiorari brought to question a judgment of contempt we will review the evidence, although giving much weight to the trial court's findings of fact. Watson v. Charlton, 243 Iowa 80, 92, 50 N.W.2d 605, 612, and cases cited. In the case before us there was the testimony of Grossnickle and other officers tending to show Battani attempted in various ways to dispose of certain bottles and glasses, in spite of Grossnickle's advice that he had a search warrant, his attempts to read it to him, and his warnings to refrain from destruction of the "evidence." Without going into further detail it must be said there was ample evidence of resistance to process, from several witnesses. Other witnesses, patrons of the "Club" which petitioner professed to operate, and the petitioner and his wife, testified to the contrary. The situation is such that we do not feel interference with the finding of the trial court on the fact question is required.

■ III. Next, petitioner says that the trial court was in error in permitting two of the officers to testify to the purchase of intoxicating liquor on the same evening and just prior to the service of the search warrant. No authority is cited for this proposition. We think the sale of the liquor by petitioner as testified to was a part of the entire transaction, so closely related to the search as to be a part of the res gestae, and definitely tending to show a lawless attitude and a strong motive for resisting the service of the warrant.

■ IV. Finally it is contended that the sentence imposed was excessive and based on passion and prejudice of the respondent against the petitioner. Again no authority is cited, but it is said that some of the matters emphasized by the court in his findings of fact showed a prejudice against the petitioner which prevented him from having a fair trial and led to the imposition of an unfair and excessive sentence. Chiefly, objection is made to the finding that petitioner's business which he operated under the expressive but somewhat misleading name of the "Candid

Club" was not a private club. Perhaps the exact nature of the operation was to some extent immaterial, and yet it did furnish some ground for a determination that Battani had a motive for resisting the process of the court. The fact that respondent commented upon the method of operation did not, in our opinion, tend to show prejudice. It showed a skepticism as to the existence of a "club" in the ordinary meaning of the term which, after reading the record, we must confess that we share.

 The sentence imposed was largely within the discretion of the trial court. It is only where this discretion has been grossly abused that we will interfere. 17 C. J. S., Contempt, section 124, page 170; 2 Am. Jur., Appeal and Error, section 118, pages 919, 920; Jones v. Levis, 240 Iowa 602, 608, 35 N.W.2d 891, 36 N.W.2d 756. The sentence here is severe, but we cannot say it was beyond the fair discretion of the trial court. The petitioner was shown by the evidence of the officers to have been defiant of the authority vested in them by the search warrant, and to have persisted in his contempt for a considerable time. The testimony of Arvene S. Nelson, a Des Moines police officer, who arrived at the petitioner's place of business during the search, or attempt to search, is illuminating. He said:

"Battani appeared to be attempting to pull the door shut. * * * Battani made the statement when we first came behind the bar that nobody was going to come in there and interfere with his business and for us to get out of his way. * * * I saw him [Battani] push Grossnickle several times. * * * Grossnickle had the search warrant in his hand behind the bar. * * * Battani wouldn't let Grossnickle read it while Grossnickle was following Battani around. * * * At one time he [Battani] told Grossnickle to go back and take care of his own business and he would take care of his. He also said: 'You haven't served any search warrant yet.' * * * During most of the time that he was behind the bar, Battani would from time to time pick up glasses, empty their contents and place the glasses on the sink or shelf under the bar. * * * Battani called Grossnickle a son-of-a-bitch."

There is other testimony to the same effect from other officers. It is denied by petitioner's witnesses, but the respondent

as trier of the facts found it sufficient, and we have said that we will not interfere with such finding. Such evidence, accepted by the court, shows that petitioner was persistently and flagrantly contemptuous of the process of the court, and so of the court itself. It is not a case where we should condemn the sentence imposed as being beyond the fair discretion of the court.—Writ annulled.

All JUSTICES concur.