JOHN CRITELLI, petitioner, v. HON. DON L. TIDRICK, Judge of Des Moines Municipal Court, respondent.

No. 48099.

(Reported in 56 N.W.2d 159)

DECEMBER 16, 1952.

REHEARING DENIED FEBRUARY 13, 1953.

Don G. Allen and Anthony T. Renda, both of Des Moines, for petitioner.

Clyde E. Herring, County Attorney, and John E. Sarbaugh, Assistant County Attorney, for respondent.

BLISS, J.—Petitioner will be referred to as plaintiff, and respondent as defendant.

On January 6, 1952, Dale Allen and Scott Crowley, policemen of the city of Des Moines, entered an eating place and tavern, known as Tropical Lounge, at 2202 Harding Road in said city, to serve and execute a search warrant, and petitioner, who was apparently in charge of the place, and Caroline Smith, an employee who interfered with the officers, were later charged with contempt of court in disobeying the search warrant. On January 11, 1952, the alleged offenders were served with notices issued out of the office of the county attorney, notifying them of an order that day issued by defendant citing them to appear at a specified time before the defendant or other Judge of the Municipal Court, to show cause why they should not be punished for said contempt. They did appear, and after some postponements, a hearing was had in the contempt proceedings on February 13, 1952, and an order was entered by defendant purging Caroline Smith of the offense charged, and finding plaintiff guilty of contempt of court pursuant to section 665.2(3), Code of 1950, and setting February 20, 1952, for the pronouncement of punishment, at which time judgment was rendered. Plaintiff challenged in this proceeding the order and the judgment of defendant.

The facts, in substance, material to the issues as set out in the return to the writ are these: Plaintiff testified that he "had no occupation on January 6, 1952. My wife owned the building which housed the Tropical Lounge, and I think Jimmie Critelli owns the business, and I have no interest at all in the Tropical Lounge. I have a beer dispenser's license to dispense at 2202 Harding Road. I work occasionally for Jimmie at the Tropical Lounge if he is busy. I don't work there, I just volunteer my time to him."

On January 5, 1952, Lester L. Kellogg, a policeman of Des Moines, submitted to defendant a printed form for use in the municipal court, designated an "Information for Search Warrant" entitled "State of Iowa, plaintiff vs. John Doe, 2202 Harding Road, Des Moines, Iowa, and Certain Intoxicating Liquors, defendant." It bore the signatures of Kellogg and of the defendant, as Judge of the Municipal Court, and stated that it was signed and sworn to by Kellogg before the defendant-judge on January 5, 1952. It also stated that the affiant believed and had good reason to believe that the defendant, John Doe, owned and kept intoxicating liquors and narcotics in the building on the premises located at 2202 Harding Road, commonly known as Johnny's Place, for sale in violation of the laws of Iowa.

· A transcript of testimony in the return given by Kellogg shows that he signed and swore to the information before the defendant-judge on January 5, 1952, who also signed his name at said time in the presence of the witness, and also made with pen and ink on the back of the information the following memorandum, to wit, "1/5/52 Evidence taken and sufficient cause shown. DLT,J."

The return further states that upon the completion of the information Judge Tidrick prepared and signed the search warrant, entitled the same as the information, bearing date of January 5, 1952, reciting in part as follows: "The State of Iowa. To any Peace Officer of Polk County, Iowa: Information on oath having been duly filed before me, by a credible resident of said County, charging that certain intoxicating liquors" (naming various kinds) were in the building and premises described in the information, and directing any peace officer to search the premises and to seize and keep all liquors found.

The information and the search warrant were delivered by Judge Tidrick to Officer Kellogg who took them from the judge's office directly to the Vice Bureau office and placed them in the drawer of a desk, which Police Officer Dale Allen described as "the desk is the one that is generally used—our desk." Officer Kellogg testified that after he placed the documents in the desk drawer he never saw them again until at the time of the hearing.

Officer Dale Allen testified that he took the information and the search warrant from the desk drawer in the Vice Bureau

office on January 5, 1952, as the return of service on the warrant states, and kept them in his possession until Sunday evening, January 6, 1952, when he and Officer Crowley went to the Tropical Lounge about 6:30 p.m.; that with the search warrant in his right hand they entered the south door, about fifteen feet directly south of the bar, and as they walked toward the bar he called in a loud voice "Police Officer with a search warrant. Don't destroy anything!"; that as he shouted this and approached the bar he saw plaintiff standing behind the bar watching him, and then saw him lean over and empty the contents of a six-ounce glass with a clinking sound onto the perforated metal lid of a drain, and then place the empty glass on the back bar; that, as he and Crowley approached the swinging gate to go behind the bar, Caroline Smith attempted to block their way until Crowley pushed her aside; that he (Allen) then went behind the bar and handed the search warrant to plaintiff, who took it in his hands and looked at it as though he was reading it, and the witness told him he was under arrest for contempt of court, and plaintiff said "O.K."; that he (Allen) then observed some ice cubes on the metal cover of the drain, and smelled an alcoholic odor there; that he removed the cover of the drain and about a foot or a foot and a half below he could see liquid, from which he attempted to fill a four-ounce bottle, but the small size of the drainpipe prevented him; that as he was doing this the plaintiff was watching him and then pulled the plug from a sump used for rinsing glasses, and let the water in it pour into the drainpipe; that the witness told plaintiff to replace the plug, which he did; Officer Allen then took a clean towel off the bar and placed it in the liquid in the drainpipe and when it became saturated he wrung four ounces of the liquid from it, which he placed in a bottle and sealed and delivered to the biochemist at the Iowa Lutheran Hospital in Des Moines, who tested it and found the liquid contained ethyl alcohol. Before Allen could finish saturating the towel Caroline Smith pulled the sump plug and let more water into the drain. The officers took possession of several whisky, or shot, glasses, some of which were wet and on the drain board as though just used, some were dry and a number were in one of the sumps or washbasins. The testimony of Officer Crowley corroborated the testimony of Mr. Allen.

Three patrons of the Tropical Lounge testified that they were about the place when police officers were there but heard no announcement that the place was being searched. One of them testified that he was seated at the bar watching plaintiff do card tricks and observed none of the matters concerning which Officers Allen and Crowley testified.

Mrs. Smith and plaintiff testified in their own behalf. Both of them knew Officers Allen and Crowley and had seen them about the place at different times. Both denied that they interfered with the officers, and said they were not aware that the place was being searched and did not hear Officer Allen make such an announcement. Plaintiff denied that he dumped any intoxicating liquor.

For the sustaining of the writ of certiorari, plaintiff urges three propositions as errors committed by the defendant:

1. In holding there was a valid search warrant in the hands of the officers who searched the premises.

2. In holding that plaintiff's guilt had been established by clear and satisfactory evidence.

3. In admitting in evidence the bottle of liquid given to the chemist for analysis.

We will discuss these propositions in the order of statement.

I. There is no fact controversy respecting the first proposition. Plaintiff's chief contention is that there was no compliance with section 751.4, Code of 1950, in that there was no "filing" of the written information "before any magistrate." The information with respect to the suspected law violations at the Tropical Lounge was laid before Magistrate Don L. Tidrick, a Judge of the Municipal Court, by Officer Kellogg, who subscribed and swore to it before Judge Tidrick. The information was not stamped or marked "filed" in any way nor placed in any file of the magistrate. After the search warrant was issued by the magistrate, the warrant and the written information were delivered to Officer Kellogg preparatory to having the warrant served and executed. As a regular police officer, Kellogg was in fact an officer of the magistrate's court. With reference to municipal courts, section 602.7, Code, 1950, states: "* * * All regular police officers shall be ex officio special bailiffs * * *."

Kellogg, as an official messenger of the magistrate's court, after evidence had been heard showing there was sufficient cause for the search and seizure, took the information and the warrant to the Vice Bureau office to have the warrant enforced, and placed them in a drawer in a desk generally used for that purpose, from which they were promptly taken by Officer Allen. Permitting the officer to take the information from the magistrate's court may not have been good or proper practice, and perhaps was an irregularity or erroneous, but it did not invalidate the action of the magistrate nor the search warrant nor nullify the execution and enforcement of the warrant by the police officers. Neither did it absolve nor purge the plaintiff of his contempt of court. What the magistrate did was within his power and jurisdiction. There is a vast difference between a void order, process or judgment of a magistrate or court, and one which is merely irregular or erroneous. The statement in Farwell v. Horton, 301 Ill. App. 372, 378, 22 N.E.2d 958, 961, is apropos:

"Of course a party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make but if a court has jurisdiction of the parties and legal authority to render the order, then it must be obeyed even though it was erroneous or improvidently entered."

As said in Glein v. Miller, 45 N.D. 1, 6, 176 N.W. 113, 115:

"To hold that an order improvidently issued can be violated with impunity is to invite litigants to resort to the use of force sufficient to maintain their rights as they understand them to be. Such a policy should not be adopted in a system of law that prides itself upon having a remedy for every wrong."

See also Campbell v. Gormley, 185 Ga. 65, 194 S.E. 177; Gornett v. State, 155 Neb. 766, 53 N.W.2d 747, 751; American Cigar Co. v. Berger, 221 Ill. App. 285; Hodous v. Hodous, 76 N. D. 387, 36 N.W.2d 552, 559; Fienup v. Rentto, S. D., 52 N.W.2d 486, 489; Kelsch v. Dickson, 71 N. D. 430, 1 N.W.2d 347, 349; City of Olympia v. Culp, 136 Wash. 374, 240 P. 360; State v. Innocenti, 170 Wash. 286, 291, 16 P.2d 439, 441, in which the court said:

"When a paper is delivered to a proper officer to be filed, the law considers it filed when so delivered. Not even the subsequent misfeasance of the officer to whom delivery is made will affect the validity of the filing or the legal rights that flow therefrom; much less would a mere irregularity, should one occur, not amounting to a misfeasance, defeat such rights. No harm to appellant is shown to have resulted from the act of the justice of the peace, his only contention being that the complaint was never, in fact, filed." (Citing 56 C. J. 1228.)

This court has followed this well-recognized rule. In Carr v. District Court of Van Buren County, 147 Iowa 663, 672, 126 N.W. 791, 794, Ann. Cas. 1913D 378, the court said: "The first premise in plaintiff's argument on this appeal to the effect that the defendants in the injunction proceedings were bound to obey the orders and decrees of the court, even if erroneous and held improvidently granted on final hearing, must, of course, be conceded." (Citing decisions of this court.)

In Larsen v. District Court of Monroe County, 230 Iowa 1100, 1102, 300 N.W. 297, 298, an original proceeding in certiorari in a contempt case, Justice Oliver for the court said: "In any event such procedure would constitute no more than a mere irregularity, which would not invalidate the latter decree." See also State v. John Doe, 227 Iowa 1215, 1218, 290 N.W. 518, and Burtch v. Zeuch, 200 Iowa 49, 202 N.W. 542, 39 A. L. R. 1349.

We have no hesitancy in holding that plaintiff's first proposition relied upon to sustain the writ is not tenable. Plaintiff stresses the decision in Thompson v. State, 190 Ind. 363, 130 N.E. 412. It supports his contention, but a later decision of that court, Goodman v. State, 201 Ind. 189, 165 N.E. 755, is to the contrary. Other decisions supporting the judgment of the Municipal Court are: State v. Innocenti, supra, 170 Wash. 286, 16 P.2d 439; Mowlan v. State, 197 Ind. 517, 151 N.E. 416; Gallagher v. Linwood, 30 N.M. 211, 231 P. 627, 37 A. L. R. 664; Reeder v. Mitchell, 117 Okla. 21, 244 P. 773; Mahnken v. Meltz, 97 N. J. L. 159, 116 A. 794; Tomlinson v. Tomlinson, 121 Kan. 206, 246 P. 980; Fowler v. State, Tex. Crim. App., 240 S.W. 2d 313, 314.

The same proposition for which plaintiff contends in his first proposition was before this court, under like circumstances,

in Battani v. Grund, Judge of Des Moines Municipal Court, 244 Iowa 623, 56 N.W.2d 166, in which Justice Thompson fully discussed many of the cases last above-cited. We held that although the information was taken by the officer from the magistrate when he received the search warrant, nevertheless this was but an irregularity which did not make the warrant void.

It is clear that the defendant-judge considered the information to have been filed as provided by section 751.4 of the 1950 Code, since in the search warrant he stated: "Information on oath having been duly filed before me * * *."

█ There is another matter which plaintiff urges in support of proposition 1. As we have stated, in both the information and the search warrant, at the time they were delivered to Officer Kellogg the name of the defendant in the title of the action was "John Doe". This was true when they were placed in the drawer of the desk in the Vice Bureau office, and there was no change in them when they were taken by Officer Allen and when he made the search. Thereafter, by someone not known to either Kellogg or Allen, the name "Mrs. Caroline Smith" was written in as defendant in the information and a line was drawn through the name "John Doe", and the names "Mrs. Caroline Smith" and "John Critelli" were written in as defendants in the search warrant and a line was drawn through the name "John Doe"; later, apparently when Mrs. Smith was discharged, a line was drawn through her name, leaving John Critelli as the only defendant. The information and the search warrant each bears the rubber filing stamp of the Clerk of the Municipal Court showing the date of "Jan. 7, 1952." In his printed argument the plaintiff (petitioner) states that the information and the warrant "in their changed and mutilated form are mute witnesses of the fact that there was no legal filing of the information in this case."

Under the testimony of the plaintiff there could well be doubts as to who owned or was operating the Tropical Lounge. In such a situation a "John Doe" information and search warrant are often used. Although in this case, since the premises, only, were to be searched it was unnecessary that any person be named as defendant. In Krueger v. Municipal Court of Sioux

City, 223 Iowa 1363, 1368, 1369, 275 N.W. 122, 125, and in State v. John Doe, supra, 227 Iowa 1215, 1219, 1220, the proceedings in each case were challenged by the petitioner because the fictitious name of John Doe was used to designate the defendant. This court held the attack to be without basis in each case. In the case first-named the premises were searched for intoxicating liquor. In the case last-named the search and seizure were for gambling devices. In the Krueger case, we said:

"Under section 13441-g4 it was not necessary that the information describe the person in charge of the premises and property, unless he was known; and, under section 13441-g5, it was not necessary that any person be named in the search warrant, unless he was to be searched. Both the information and the search warrant sufficiently described the premises to be searched. The name, John Doe, in the information and search warrant was merely surplusage, and could in no way affect the validity of the search warrant, as far as the premises were concerned."

In the case before us there was no intention nor attempt to search the person of the plaintiff.

For the reasons just stated the striking of anyone named as defendant was immaterial and in no way prejudicial to the plaintiff as no person need have been named as defendant. Furthermore, any striking or changes in the names of the defendants were made after the search and seizure and did not affect any right of petitioner. The changes were very likely made by someone to conform the documents to the facts by naming John Critelli as the person in charge of the premises.

II. We find and hold that plaintiff's second proposition is without merit. As said in Cornett v. State, supra, 155 Neb. 766, 772, 53 N.W.2d 747, 751: "A contempt proceeding is sui generis and, while it partakes of the nature of a criminal proceeding, it is neither criminal nor civil." In Sawyer v. Hutchinson, 149 Iowa 93, 94, 127 N.W. 1089, 1090, this court also said: "Again, a contempt proceeding, being quasi criminal in nature, calls for a greater weight of evidence than an ordinary civil case, and the rule generally prevailing in other states is that a clear case should be made out before an accused will be punished for violating an injunctional decree."

In Johnstone v. Johnstone, 226 Iowa 503, 508, 284 N.W. 379, 382, the court said: "This court has held that a party will not be adjudged to be in contempt of court unless his disobedience is wilful, and proof of guilt must be clear and satisfactory."

We have held in cases of this kind that while they are not triable de novo in this court, yet the judgment of the lower court in contempt cases does not possess in full measure all the attributes of a jury verdict, and the findings of the respondent court, though not conclusive on review, are entitled to weight in our consideration of the facts and determination of whether the contempt has been established by clear and satisfactory evidence. Roach v. Oliver, 215 Iowa 800, 803, 244 N.W. 899; Harding v. McCullough, 236 Iowa 556, 19 N.W.2d 613; Watson v. Charlton, 243 Iowa 80, 92, 50 N.W.2d 605, 612; Battani v. Grund, supra; Jones v. Levis, 240 Iowa 602, 607, 608, 35 N.W.2d 891, 36 N.W.2d 756.

It is our conclusion that the judgment of the court below holding the plaintiff guilty of contempt of court is established by evidence of the weight and character required by our decisions. Courts are charged with the duty of guarding their proceedings against everything which interferes or tends to interfere with the due and orderly administration of justice. McCauley v. State, 124 Neb. 102, 245 N.W. 269, 271; Murphy v. Wright, 167 Iowa 75, 80, 148 N.W. 985.

III. Plaintiff's third proposition is an assertion of error in the admission of Exhibit P, which was the four-ounce bottle of liquid that Officer Allen testified he squeezed from the clean, ironed towel which he saturated with liquid in the drainpipe, into which he saw the plaintiff pour the contents of a six-ounce glass. Allen testified that he placed a yellow seal with his initials on it on the bottle of liquid, which he kept in his custody until he delivered it to Mr. White, the chemist, the next day, Monday, January 7, 1952; that he had not since seen the bottle until Mr. White produced it in the courtroom, with his yellow seal still on the bottle. Mr. White testified that Exhibit P and its contents were delivered to him on January 7, 1952, and that he analyzed its contents and found that it contained ethyl alcohol; that he then wrote his name on a gummed label and

put the label over the paraffin across the top of the bottle, and when he came to the courtroom about 10:30 a.m. he delivered the bottle to Mr. Sarbaugh, the assistant county attorney. Mr. White, who took the witness chair after the noon recess, testified that he did not have the bottle after he gave it to Mr. Sarbaugh until he took the witness chair. He testified: "After I made the analysis I sealed the bottle. It is still sealed in the same condition that it was."

Plaintiff complains because Mr. Sarbaugh did not testify that he had not tampered with the bottle. It was not necessary that he so testify. Mr. White, testifying after the noon recess, said that he analyzed the liquid when it was given to him by Officer Allen, and sealed the opening at the top of the bottle with paraffin, and put a gummed label over the paraffin with his name on it, and that the bottle and seals on Exhibit P as he held it on the witness chair was still sealed in the same condition that it was when the seals were placed on it by him.

The trial court rightly overruled plaintiff's objection to the admission in evidence of Exhibit P.

There was sufficient evidence that plaintiff had attempted to dispose of intoxicating liquor, even though Exhibit P had not been admitted. The evidence that Officer Allen detected the odor of alcohol in the drain was sufficient. Krueger v. Municipal Court of Sioux City, supra, 223 Iowa 1363, 1371. See also State v. Barton, 202 Iowa 530, 532, 210 N.W. 551, 552, where the liquor was left in the office of a justice of the peace, where persons were present and could easily have tampered with it. This court said: "The possibility that it was, or could have been, tampered with in the presence of the justice is too remote to justify the exclusion of the exhibit from the consideration of the jury."

In United States v. Singer, 43 F. Supp. 863, a narcotic case, the sample was lost after the analysis, and the court held that the results of the analysis were admissible. In State v. Christie, 243 Iowa 1199, 1210, 53 N.W.2d 887, 892, the court, speaking through Justice Smith, said:

"It is urged the trial court erred in admitting a bullet in evidence without sufficient evidence as to its identity as being

474

the one taken from decedent's head * * *. The bullet was identified by the surgeon who removed it from decedent's head and by the identification expert who was present when it was removed. We hardly see how proof as to its custody in the meantime could add to its identification."

It is our conclusion that Exhibit P and its contents were definitely identified and traced and were properly received in evidence.

The writ of certiorari is therefore annulled and the judgment of the Municipal Court is affirmed.—Writ annulled; judgment affirmed.

All JUSTICES concur.