## ALFONSE DOBRUSKY V. STATE OF NEBRASKA.
### 299 N. W. 539

FILED AUGUST 1, 1941.   No. 30976.

*Lloyd E. Peterson,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ.

EBERLY, J.

The State in this proceeding filed its "amended information" in the district court for Otoe county, Nebraska, on October 9, 1939, charging plaintiff in error, Alfonse Dobrusky, herein designated as defendant, with the crime of manslaughter.   This information sets forth, in substance, that at and within the said county on or about the 12th day of July, 1939, the defendant did then and there one Delphine Turille, unlawfully and feloniously, but without malice, kill and slay.   This charge grew out of an automobile accident on that date in which Delphine Turille, riding

with Dobrusky, was killed. The trial resulted in a verdict of guilty, and from the order of the trial court overruling defendant's motion for a new trial, and from the penalty imposed by the court, defendant prosecutes error to this court.

The assignments of error, constituting the burden of the defendant's appeal, are as follows: (1) That the trial court erred in sustaining the motion of the state to reconsider the court's order sustaining defendant's motion to quash the original information filed on September 2, 1939; (2) the court erred in permitting the amended information to be filed on October 9, 1939; (3) that, after the order quashing the original information, the trial court had no further jurisdiction over the person of the defendant or to try or determine any further issues in this proceeding; (4) that the evidence in the record is insufficient to sustain the verdict or the sentence imposed by virtue thereof; (5) that the court erred in refusing to grant a new trial because of newly discovered evidence.

The following constitutes the important chronology in this case:

September 2, 1939: Original information filed by the state.

September 16, 1939: Motion of defendant to quash information submitted to the court.

September 18, 1939: Motion to quash information sustained by the court, but the court's order as thus entered did not include a dismissal of the proceedings or a discharge of the defendant.

September 18, 1939: Order entered adjourning May, 1939, term of district court *sine die*.

September 18, 1939: September, 1939, term of said court opened.

September 26, 1939: State given leave to withdraw motion to reconsider the former ruling of the court sustaining defendant's motion to quash original information, and also to withdraw an amended information filed September 19, 1939.

September 28, 1939: Defendant filed special appearance,

"for the sole purpose of objecting to the jurisdiction of the court over the person of the defendant or to try or determine any further issues in this proceeding for the reason that the court is without jurisdiction."

October 7, 1939: Special appearance of defendant overruled, motion of state to reconsider order of September 18, 1939, quashing information, and state was given leave to file an amended information within five days, a copy of which is to be served upon the defendant.

October 9, 1939: Amended information with proof of service filed.

February 13, 1940: Defendant appeared in court and pleaded not guilty to the amended information, and the cause was thereupon set for trial.

In view of the proceedings had, the challenge to the jurisdiction of the district court in the instant case cannot be sustained.

Our statutes contemplate that upon a complaint in writing charging a defendant named therein with the commission of a felony being filed with a magistrate, he shall proceed to hold a preliminary examination, and, "If upon the whole examination, it shall appear that an offense has been committed and there is probable cause to believe that the person charged has committed the offense, the accused shall be committed to the jail of the county in which the same is to be tried, there to remain until *he be discharged by due course of law*," etc. (Italics ours.) Comp. St. 1929, sec. 29-506.

Further, "All recognizances taken under this title, together with a transcript of the proceedings, where the defendant is held to answer, shall be certified and returned forthwith to the clerk of the court at which the prisoner is to appear." Comp. St. 1929, sec. 29-509.

The holding of an accused person for trial in the district court at the conclusion of a preliminary examination gives that court jurisdiction. *Nelson v. People*, 38 Mich. 618.

In opposition to the above conclusion the defendant cites *Jones v. Wolfe*, 42 Neb. 272, 60 N. W. 563, as supporting

his contention that, "Where an information is quashed, without conditions, the court is without power or jurisdiction to proceed further with criminal proceedings." In *Jones v. Wolfe, supra,* we have presented the ordinary case of where a bill of exceptions is quashed in this court and we properly held there that, "After a bill of exceptions has been quashed it can be considered for no further purpose in the case in which it was originally filed in this court." But the quashing of the bill of exceptions did not determine the jurisdiction of the court over the appeal.

It will be noted that in its order of September 18, 1939, sustaining defendant's motion to quash the original information, the trial court neither dismissed the proceedings nor discharged the defendant. The situation thus presented may be said to be analogous to sustaining a general demurrer in a civil case, not followed by the dismissal of the action. At all events, it clearly appears from the record presented that the district court by the limitations of its order has, in effect, retained jurisdiction to have a disposal of this case made on the merits in the regular course of proceedings. At least it cannot be said that the mere sustaining of the motion to quash operated as a discharge of the defendant by due course of law, when the trial court refrained from entering such a judgment. On the other hand, the retention of jurisdiction is necessarily implied by the following express provisions of our Criminal Code: "When a motion to quash, or a plea in abatement, has been adjudged in favor of the accused, he may be committed or held to bail in such sum as the court may require for his appearance at the first day of the next term of said court." Comp. St. 1929, sec. 29-1810.

It is obvious that the jurisdiction of the trial court over the person of the defendant, and its power or jurisdiction to proceed further with this criminal proceeding, was not terminated by its order to quash the information entered on September 18, 1939, and this without reference to the terms of court in which the respective orders were entered.

The questions of proper practice in the matter of setting

aside the order of the trial court entered on September 18, 1939, and of permission given the county attorney to file an amended information are not necessary to the disposition of the instant case, and will not be determined.

It clearly appears that, after the overruling of the special appearance filed by the defendant, he appeared and pleaded not guilty to the so-called "amended information." It is not questioned but what the so-called amended information properly charged an offense of which the district court had jurisdiction, and when the accused pleaded the general issue thereto, he thereby waived all defects in the proceedings which might have been excepted to by motion to quash or by plea in abatement. *Green v. State,* 116 Neb. 635, 218 N. W. 432; *Huette v. State,* 87 Neb. 798, 128 N. W. 519; *Olsen v. State,* 114 Neb. 112, 206 N. W. 1.

Under the terms of the record in this case all objections based on proceedings had prior to the completion of the issues to be tried by the plea of not guilty have been waived by the defendant and may not be considered in his behalf.

The matter remaining for our consideration is the determination as to the sufficiency of the evidence to sustain the conviction.

We have carefully considered the evidence and do not find that the conduct of the county attorney complained of as misconduct is of such a character as to justify a reversal on that ground. We also find that the evidence in the record affords ample foundation for the introduction in evidence of a map of the *locus in quo,* and the rule of evidence excluding hearsay was not transgressed thereby.

The defendant presents no objection to the instructions given the jury by the trial court, but he urged that the evidence is insufficient to sustain the verdict.

It is admitted by the evidence that Delphine Turille was fatally injured in an automobile collision on July 12, 1939, on highway No. 2 in Otoe county, while being conveyed by the defendant in his automobile as his guest at the time of the accident. By the instruction with reference to this casualty, given by the court, to which no objections are

made, the trial jury were instructed "that the burden of proof is upon the state to prove by the evidence beyond a reasonable doubt that at the time and place of said collision the said defendant Alfonse Dobrusky was operating the automobile in which the said Delphine Turille was riding, and that the said defendant did unlawfully and wilfully operate said automobile on said highway in a careless, negligent and unlawful manner, and at a rate of speed greater than was reasonable and proper, having regard for the traffic and the use of the road, and the condition of the road, and at a rate of speed such as to endanger the life and limb of any person, and by so doing did cause the death of the said Delphine Turille."

The court further instructed the trial jury with reference to the law applicable to the case, as follows: "All motor vehicles entering or crossing state highways on which stop signs are erectd shall come to a full stop as near the right of way line as possible, before driving onto such state highway, and, regardless of direction, shall give the right of way to vehicles upon said highway."

The trial court also instructed the jury: "The laws of Nebraska further provide: 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (b) The following speeds shall be *prima facie* lawful, but in any case when such speed would be unsafe, it shall not be lawful: (1) Twenty miles per hour in any business district; (2) twenty-five miles per hour in any residence district; (3) fifty miles per hour under other condits (conditions). (c) The fact that the speed of a vehicle is lower than the foregoing *prima facie* limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.' "

The fatal accident occurred on highway No. 2, about two

miles west of Nebraska City. The terrain at this point is comparatively level. The highway is paved 20 feet in width. Two hundred feet north of the paved highway is situated the Ed Miller home. A north and south driveway from the highway affords ingress and egress to this home. At a point 1,015 feet east of this driveway a graveled county road, also extending from north to south, intersects highway No. 2. There is a stop sign located on this county road as it enters the highway from the north. Between 11 and 12 o'clock on the night of July 12, 1939, the defendant drove his car eastward over the highway, accompanied by his guest, Delphine Turille, and following at some distance an automobile that was ahead of him, going in the same direction. At about this same time William Schnittker approached highway No. 2 from the north on the county road in his automobile, and came to the stop sign and stopped. As he did, he noticed two cars approaching from the west on the highway, the first of which passed the intersection just as he was stopping. His testimony is that he then shifted into low gear, looked to the west again and saw a car, which was the defendant's, and the second of the two he had previously seen, approaching him then about a quarter of a mile away. He then continued onto the paved highway, crossed to the south side thereof, and was proceeding eastward on the south side of the highway going about 25 miles an hour. His tail lights were burning at this time. About 150 feet east of the road intersection he heard a noise, and the car from the west collided with the left rear portion of his automobile, damaging the same, and thus deflected by the force of the impact defendant's car left the pavement 30 feet further on, and thereafter for 46 or more feet made deep tracks in the north shoulder of the highway, then overturned and came to rest 195 feet east of the point of impact and 80 feet east of where Schnittker's car was stopped. Witness Miller, from his home, noted Schnittker's approach to the highway from the north, saw him stop, saw him start, then turn east on the highway with his tail-lights

burning; noted that, after the Schnittker car had started, he heard this Dobrusky car coming from the west, glanced south down his driveway and saw it go past; later he heard the noise of the accident, and then went down to where the Dobrusky car was lying. There is no evidence in the record of any automobile horn being sounded by the Dobrusky car. We will not attempt a recital of all the evidence introduced. However, the defendant had passed over the highway a few hours previous to the accident. He knew the conditions of the highway and the existence of the road intersection. There is ample evidence in the record, if believed by the jury, that fully establishes that at the time of the accident the defendant was recklessly driving his car at a rate of speed clearly greater than what was reasonable and proper, and in excess of 50 miles an hour; that, by reason of the excessive speed and reckless driving, his speed was not reduced as he approached the road intersection, and his car was so out of control that he failed to pass the automobile ahead of him, whose taillights were burning, but collided with the same, thus occasioning the fatal accident. The evidence as an entirety is ample, if believed by the jury, to sustain their verdict. In the face of the record we are unable to say they are mistaken.

We have carefully considered the matter of newly discovered evidence as presented by the defendant, in its entirety, and the locked brake to which this proof pertains, appears rather as the result of the accident than as the cause of it. The entire matter invoked the discretion of the trial court, and we do not find it has been abused.

It follows that the verdict and sentence of the trial court are proper, and the judgment is

AFFIRMED.