No. 18,188.

F. H. Zimmerman, as Superintendent of Colorado State Hospital *v*. Mary Angele.

(321 P. [2d] 1105)

Decided February 17, 1958.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for plaintiff in error.

No appearance for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THIS is a habeas corpus proceeding wherein Mary Angele, herein referred to as Mary, sought her release from the Colorado State Hospital in Pueblo, Colorado. The facts are not in dispute.

On November 8, 1955, an order was entered by the County Court of the City and County of Denver wherein it was found and ordered that:

"Mary Angele is so insane or distracted in her mind as to endanger her own person or property, or to [endanger] the person or property of another, or others, if allowed to go at large.

\* \* \*

"It is further ordered that said respondent [Mary Angele] be committed to the Colorado State Hospital at Pueblo, Colorado, to be confined, treated and cared for as the law directs, *until discharged according to law* \* \* \*.

\* \* \*

"Commission's description of behavior of respondent which necessitated commitment — Schizophrenia * * *." (Emphasis supplied.)

Mary was taken to Pueblo and confined in the state hospital where she worked in one of the hospital kitchens. During her confinement hospital attendants gave her virtually no medical or psychiatric care, for the reason that it was soon determined by the hospital attendants that Mary was not suffering from schizophrenia; that she was not mentally ill, but rather mentally deficient; that she has an IQ of about 55 to 60 and has the mentality of a child eight or nine years of age; that her mentality is "at a low imbecile level" and she would properly be classified as a "mental defective" rather than "insane." There is no contention or suggestion that the county court did not comply with all statutory requirements necessary to jurisdiction, though it is contended that the judgment and order of commitment was erroneous.

On April 3, 1956, a *petition seeking an order of restoration to reason* was filed in behalf of Mary in the County Court in Denver. This petition was filed in behalf of Mary by the same counsel who filed this habeas corpus action in her behalf and is still pending.

On October 4, 1956, petition for writ in the nature of habeas corpus was filed in behalf of Mary in the District Court of the City and County of Denver, whereby she seeks her release from the Colorado State Hospital at Pueblo. On the same day the petition was filed it was granted ex parte and Dr. Zimmerman, superintendent of the hospital, was ordered to present Mary in the District Court on October 25, 1956, and to then show cause for her detention.

On October 23, 1956, Zimmerman filed his return, setting forth most of the facts appearing above. On the same day a stipulation was filed, signed by the Attorney General representing Zimmerman and the attorney for Mary, whereby it was agreed that Mary not be brought

to Denver on October 25, 1956, and that on that date the parties present arguments on the question as to whether the district court had any jurisdiction of the matter.

On October 25, 1956, Mary, as stipulated, was not in court and the court refused to hear arguments on the question of jurisdiction, gave Mary three days to file a reply, and continued the matter for one week.

Hearing on the habeas corpus matter was commenced on November 1, 1956, and continued until November 9, 1956, because of illness of Dr. Zimmerman, and was concluded on that day, Dr. Zimmerman being present.

At the close of the testimony and, so far as the record discloses, without opportunity being afforded counsel to argue the question of jurisdiction, the trial judge announced his decision and stated, among other things: "* * * on November 22, 1955, it was determined [by hospital attendants] that Mary Angele was not an insane person, was not diseased in mind and, if anything, that she was what might be called and known as a mental defective, and that she had the mentality of a nine-year old person.

"The Court finds that in such circumstances it was the duty of the Superintendent of the Hospital for the Insane to make a report to the County Court that such person was not insane, and discharge her. * * *.

"It is ordered that the petitioner be discharged and the writ sustained."

Dr. Zimmerman, as Superintendent of the Colorado State Hospital, is here by writ of error seeking reversal.

The Attorney General, appearing for Dr. Zimmerman, directs his entire argument to the proposition that the district court was without jurisdiction in the matter. This is the point pleaded in the return and sought to be argued in the trial court by the Attorney General and to which the trial court stated:

"I am not going to hear you on it."

It has been consistently held by this court, (1) that habeas corpus may not be used in lieu of a writ of

error to correct erroneous decisions of another court, and (2) that habeas corpus may not be used to procure the release of one restrained of his liberty by reason of an erroneous judgment, but may be used in cases where the judgment is *void* for lack of jurisdiction.

█ Clearly the county court had jurisdiction to order Mary committed, notwithstanding the order of commitment was based on an erroneous diagnosis. That order could have been reviewed by writ of error. No such review has been sought. Moreover, other recourse was readily available since the county court had continuing jurisdiction to vacate or amend its prior order upon a proper showing. Counsel for Mary was aware of this and properly filed a petition in the county court pursuant to C.R.S. '53, 71-1-19, seeking an adjudication that Mary had been restored to reason and should therefore be discharged. Counsel's reasons for proceeding by habeas corpus rather than pursuing the matter in the county court do not appear in the record.

█ It is elementary that when a court of competent jurisdiction has acquired jurisdiction of an action, no other court may, by habeas corpus proceedings, interfere with its determination of matters concerning which it has acquired such jurisdiction.

The general rule is stated in 39 C.J.S., 596, §53:

"Pursuant to a general rule of wide application, on which there is no conflict of authorities, it has been held that a court is without jurisdiction where it attempts by habeas corpus to interfere with the exercise by another court of jurisdiction theretofore acquired, whether such jurisdiction is acquired in another habeas corpus proceeding or on appeal, or otherwise, unless the prior jurisdiction has been terminated. * * *."

Also, in 25 Am. Jur., 223, §108:

"It is a settled rule that wherever a court has acquired jurisdiction of a case, no other court may, upon habeas corpus, interfere with its action as to matters concerning which it has acquired jurisdiction. Any other rule would

produce a conflict of jurisdiction over the right to the custody of the person of the prisoner and lead to inextricable confusion, resulting in a defeat of the due administration of the law. * * *."

A case squarely in point is *Hart v. Best,* 119 Colo. 569, 205 P. (2d) 787, wherein this court quotes the above rules with approval thereof, and further states:

"* * * It is a fundamental principle of law, dating from the very foundation of courts, that where one court acquires jurisdiction of the person and subject matter, such jurisdiction cannot be ousted by another court of co-ordinate jurisdiction."

The court quoted with approval the following language from Church on Habeas Corpus (2d ed.), page 374, §265:

"* * * So where one court has obtained jurisdiction of a case no other court of concurrent jurisdiction will interfere therewith; and when the jurisdiction of a court is exclusive [as in this case], the law applies with still greater force; for then no other court will take jurisdiction at all to interfere with or interrupt its proceedings preliminary."

In *In re Packer,* 18 Colo. 525, 33 Pac. 578, this court said:

"* * * It is to be noticed *in limine,* that only jurisdictional questions can be reviewed in this proceeding by habeas corpus, leaving the parties aggrieved by any step that is merely erroneous to the usual remedy by a writ of error. *Ex parte Farnham,* 3 Colo. 545.

* * *

"* * * The district court having jurisdiction of the defendant, and jurisdiction of the offenses charged, when the application for the consolidation was presented, it had jurisdiction to determine that application. If it erred in its conclusion, such error in no way affected its jurisdiction. In other words, it had power to make an erroneous order as well as a correct one."

In *Urbancich v. Mayberry,* 124 Colo. 311, 236 P. (2d)

535, Justice Moore, speaking for this court in an unanimous decision, said:

"The district court in considering the question as to whether the writ of habeas corpus should be made permanent was limited in its inquiry to determine whether the county court acted in excess of its jurisdiction, since only jurisdictional questions can be reviewed by proceedings in habeas corpus. One who suffers from an order or judgment which is merely erroneous has no remedy by writ of habeas corpus, but must proceed by writ of error. *In re Packer,* 18 Colo. 525, 33 Pac. 578; *Hart v. Best, Warden,* 119 Colo. 569, 205 P. (2d) 787.* * *."

In *Smith v. Best,* 115 Colo. 494, 176 P. (2d) 686, petitioner sought his release from the state penitentiary by habeas corpus. The respondent warden *filed a motion* confirming the essential facts of the petition, alleging that defendant's remedy, if any, was by writ of error *that the court was without jurisdiction* and requesting that the petition be dismissed, the writ of habeas corpus vacated, and defendant remanded. The trial court *heard arguments* and *granted the motion.* In affirming and approving said action, this court said:

"* * * Counsel for defendant admits in his brief that habeas corpus will not lie unless the questioned sentence is void. In this, of course he is correct. 29 C.J., p. 25, §19. Every other contention which might otherwise justify examination and discussion has recently been settled in this jurisdiction by this court and no necessity exists for a present review thereof or quotation from our opinions in those cases. *O'Day v. People,* 114 Colo. 373, 166 P. (2d) 789; *O'Day v. People,* 114 Colo. 592, 168 P. (2d) 270; *People ex rel. Best v. District Court,* 115 Colo. 240, 171 P. (2d) 774."

*In re Rainbolt,* 64 Colo. 581, 172 Pac. 1068, was an original proceeding in habeas corpus to obtain release from a custodial order of the county court in which court Lucy Rainbolt had been adjudged insane and had been

committed to the custody of her husband. In denying the application, this court said:

* * * While such judgments and decrees are final in the sense that they determine matters then in controversy, and are subject to review on error, they can not, in the very nature of things, be irrevocably conclusive. In the case of plaintiff the order of commitment was 'until the further order of the court.' Plainly the court had in mind the fact that other orders might become necessary and accordingly left the proceedings open; and whether the court did so or not, the case at all times would have been open for further action by the court to meet any exigency.

* * *

"* * * Manifestly it applies with even greater force where the liberty of the plaintiff is involved, and under it the petitioner may have the issue of her present sanity adjudicated by the County Court in the same manner that like disputed questions may be therein heard and determined.

"The application for the writ is therefore denied, and plaintiff is remanded to her remedy in the County Court, which has full jurisdiction to hear and adjudge all questions involved. That court not only has jurisdiction to hear and determine, but it is its duty to do so."

In *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995, it was said:

"* * * The jurisdiction of the court under this lunacy statute is a continuing one, and all proceedings, judgments and orders thereunder 'are of a continuing character, and open to change and modification on application of any party in interest in the court having original jurisdiction.' *In re Rainbolt,* 64 Colo. 581, 172 Pac. 1068. We also held in that case, referring to the order reserving jurisdiction, 'that other orders (than the approval and commitment orders) might become necessary and accordingly (the trial court) left the proceedings open; and whether the court did so or not, the case at all times

would have been open for further action by the court to meet any exigency.' "

In Mary's case, the county court in its order of commitment expressly provided for commitment *"until discharged according to law,"* so we find there was an express reservation made by the county court, the only court that can grant a discharge.

In *Hill v. People,* 118 Colo. 571, 198 P. (2d) 450, the court said:

"We have held that the jurisdiction of the *county court* under the lunacy statute is a continuing one and that all proceedings, judgments and orders thereunder are open to modification or change at any time on petition of any interested party, and that the *county court* in which the original proceedings were had has jurisdiction to set them aside in their entirety or to modify or change the commitment orders without a specific reservation of jurisdiction. *In re Rainbolt,* 64 Colo. 581, 172 Pac. 1068; *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995; *Isham v. People,* 82 Colo. 550, 262 Pac. 89."

In *People ex rel. Best, Warden v. County Court,* 110 Colo. 249, 132 P. (2d) 799, in an original proceeding in the nature of prohibition, the County Court of Fremont County was restrained from taking any steps with reference to proceedings instituted therein seeking to have restored to reason and discharged a person who had been adjudicated insane and committed by the County Court of Denver. It was not only held that the county court has exclusive and continuing jurisdiction in lunacy proceedings, but that the county court which has acquired jurisdiction is the *only county court* that can enter any order in the matter. We said:

"In the case of *In re Rainbolt,* 64 Colo. 581, 172 Pac. 1068, we held that inherently all proceedings, judgments and orders under the act relating to insane persons (chapter 105, '35 C.S.A.) are open to change and modification, on application of any party in interest to the court having original jurisdiction, and where modifica-

tion is sought, recourse first must be had to such court. This right exists independent of section 18, supra, and is not limited by any expression therein as to venue or other condition. This is made clear in the case of *People v. Musser*, 75 Colo. 257, 225 Pac. 218; consequently the county court of Denver, in which the original jurisdiction on Anderson's mental condition was invoked, had continuing jurisdiction in the proceeding, and any application for a modification of the original judgment could be made to no other court. The county court of Fremont county had no jurisdiction in the premises and our order, therefore, is that the alternative writ heretofore granted be, and the same hereby is, made absolute."

■ Under C.R.S. '53, 7-1-1, et seq., county courts have exclusive and continuing jurisdiction over all lunacy proceedings, including (1) insane persons; (2) mentally defective persons, and (3), persons not insane, but who are, because of old age, disease, weakness of mind, etc., incapable of taking care of themselves or their property.

Clearly the county court could, and no doubt would, have ordered Mary's discharge from the state hospital had she pursued the matter pending in that court at the time she brought habeas corpus proceedings. It is equally clear that the district court was without jurisdiction and its order of discharge is void.

We do not have before us the petition pending in the county court, hence may not speculate as to whether it it broad enough to warrant further proceedings to have Mary adjudicated a mental defective and committed to "The State Home and Training School for Mental Defectives." Obtaining an unqualified order for Mary's discharge may well be a disservice to her, for she, being a mental defective, may "endanger her own person or property or the person or property of another if allowed to go at large * * *." In the county court and only in the county court can these questions be resolved.

The judgment of the trial court is reversed and the

cause remanded with directions to vacate the order of discharge and dismiss the petition.

Nothing said herein shall be construed as in any way impairing or limiting Mary's rights to pursue the matters set forth in her petition pending in the county court.

We express our appreciation for the valuable argument and citation of authorities contained in the brief filed by the Attorney General in behalf of Dr. Zimmerman, which we found of material help in determining the issues involved.

MR. CHIEF JUSTICE HOLLAND and MR. JUSTICE SUTTON not participating.