ROBERT D. MCFARLAND, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

109 N. W. 2d 397

Filed May 26, 1961. No. 34916.

*Dwight Griffiths,* for plaintiff in error.

*Clarence A. H. Meyer,* Attorney General, and *Rush C. Clarke,* for defendant in error.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, and BOSLAUGH, JJ.

CARTER, J.

Defendant was proceeded against for a constructive criminal contempt. The trial court found the defendant guilty and sentenced him to serve 30 days in the Morrill County jail and pay a fine of $500 and costs. Defendant seeks a review in this court by petition in error. In reviewing the case we shall refer to the plaintiff in error as the defendant and the defendant in error as the State.

The record shows that on November 21, 1959, a complaint was filed in the district court for Morrill County charging one Paul E. Rhodes with the crime of arson. On December 4 and 5, 1959, a preliminary hearing was held before Albert W. Crites, judge of the district court for the Sixteenth Judicial District, presiding as judge of

the district court for Morrill County. At the conclusion of the preliminary hearing Rhodes was held for trial and his bail fixed at $1,000, which was posted. On January 11, 1960, an information was filed in the district court charging Rhodes with the crime of arson. On the same day Rhodes was surrendered to the sheriff of Morrill County by his bondsmen. Rhodes immediately filed a petition for a writ of habeas corpus in the county court of Morrill County in which it was alleged that he was unlawfully deprived of his liberty by the respondent sheriff of Morrill County under the commitment issued by the district court in the arson case in that the preliminary hearing in the district court was not in accordance with law, and that the evidence there adduced was insufficient to show that an offense had been committed or probable cause for holding Rhodes to answer for the alleged offense.

The defendant was at all times herein mentioned the county judge of Morrill County. The defendant as such county judge issued the writ of habeas corpus on January 11, 1960. The respondent sheriff of Morrill County made a return of the writ in which it was stated that Rhodes was hereby delivered to the county court, that he had been surrendered to him at 11:15 a.m., on January 11, 1960, by his bondsmen, and that he was being detained for trial in the district court on a charge of arson by an order of the district judge entered on December 5, 1959, while acting as an examining magistrate in the arson case pending against Rhodes in the district court. The habeas corpus case was set for hearing on January 27, 1960, and Rhodes was released on his own recognizance.

After his release by the defendant as county judge, Rhodes was taken by the sheriff of Morrill County and arraigned in the district court before Albert W. Crites, district judge. Objection was made to the arraignment because of the previous issuance of the writ of habeas corpus by the defendant as county judge. The objection

was overruled. Rhodes was arraigned and stood mute, a plea of not guilty was entered by the court, bond was fixed at $1,000, and a commitment issued directing the sheriff of Morrill County to take Rhodes into custody and hold him in the jail of Morrill County or any other county jail in the state until bond was furnished. The sheriff certified on the commitment on January 11, 1960, the date of the commitment, that Rhodes was committed to the custody of the jailor of the Scotts Bluff County jail.

On January 27, 1960, the defendant, as county judge, issued the document described "bench warrant and complaint" set out in the information in the proceeding presently before the court. We shall hereafter refer to it as the bench warrant. No petition, complaint, or affidavit was filed in the county court prior to the issuance of the bench warrant. The bench warrant issued by the defendant as county judge asserted at length that the preliminary hearing held by Judge Albert W. Crites was in violation of the Constitution and laws of Nebraska and the Constitution of the United States; that Rhodes was willfully and unlawfully deprived of his liberty by the orders of Judge Albert W. Crites; that Rhodes was confined unlawfully in the county jail of a county outside the jurisdiction of the county court of Morrill County; and that Judge Albert W. Crites did willfully, unlawfully, and contemptuously disobey and resist the lawful processes and orders of the county court and willfully, unlawfully, and contemptuously attempted to obstruct the proceedings and hinder the administration of justice in the county court of Morrill County. The respondent sheriff of Morrill County was thereupon directed to pursue and arrest Albert W. Crites and bring him before the court and the judge thereof, Robert D. McFarland, to be dealt with according to law.

The bench warrant was not served. On February 1, 1960, defendant entered an order withdrawing the bench warrant. On February 5, 1960, the information in the

instant case was filed charging that on January 27, 1960, the defendant willfully, unlawfully, and contemptuously attempted to obstruct the proceedings and hinder the due administration of justice in the case of State v. Rhodes, the arson case pending in the district court, by preparing, writing, signing, issuing from the county court of Morrill County, and delivering to the sheriff of that county, the bench warrant hereinbefore referred to, contrary to the authority and integrity of the district court for Morrill County and against the dignity thereof.

The district court file in State v. Rhodes and the transcript of the evidence taken at the preliminary hearing before the district judge were offered and received in evidence without objection. The defendant admitted that he issued the bench warrant as alleged.

The evidence shows that Rhodes was an attorney at law who had been engaged in the practice of law at Bridgeport, the county seat of Morrill County, for many years. On January 26, 1960, he and the defendant called on Marvin L. Holscher, an attorney for Rhodes, at his office in Scottsbluff. The possible disqualification of Judge Albert W. Crites was there discussed by Holscher and defendant in the presence of Rhodes. Holscher testified that during the discussion of the possible disqualification of Judge Crites the defendant inquired as to how was he going to hear the habeas corpus proceeding if he is in jail, at which time Holscher stated: "I will have nothing to do with it." On January 10, 1960, and January 19, 1960, Holscher had discussed with Rhodes in his office at Scottsbluff the proposed filing of the habeas corpus action in the county court, and on both occasions the defendant was present and participated in the conferences. Holscher appeared and tried the habeas corpus case for Rhodes before the defendant as county judge on January 27, 1960. On that day, after the hearing, the defendant and Rhodes again came to the office of Holscher in Scottsbluff where a conference was held and a journal entry prepared for filing in the

county court of Morrill County. Holscher testified that he had been employed by Rhodes on November 21, 1959, and had terminated that employment following the habeas corpus hearing on January 27, 1960.

The evidence further shows that defendant had conferred with Rhodes in Rhodes' office on several occasions concerning the habeas corpus action pending in his court. Defendant stated that he had a key to Rhodes' law office and that he habitually used the office for legal research. The defendant admits that the bench warrant was drafted in Rhodes' office and that Rhodes typed it as defendant dictated it. Defendant testified that he was not admitted to the bar and his knowledge of law was limited to his 3 years experience as county judge. He asserted that he did all the work of preparing the bench warrant and that Rhodes' service was limited to the typing of the instrument. Defendant further testified that he talked to two other Scottsbluff lawyers who gave him no encouragement in his plan to cite Judge Crites for contempt of the county court. On the day of the trial a subpoena was issued for Rhodes. The sheriff testified that it was not served because Rhodes could not be found in the county.

The defendant contends that the trial court erred in failing to find that the county court had jurisdiction of the action for habeas corpus filed in the county court of Morrill County. The State asserts that the county court was without jurisdiction to hear the habeas corpus case irrespective of the concurrent jurisdiction granted to district and county courts in habeas corpus proceedings by section 29-2801, R. R. S. 1943. It is fundamental, of course, that where courts have concurrent jurisdiction, the first to assume jurisdiction retains it to the exclusion of the other. Terry v. State, 77 Neb. 612, 110 N. W. 733.

It is the established rule in this state that the sufficiency of evidence adduced at a preliminary hearing to hold an accused to answer for a crime with which he is

charged may be raised and tried in habeas corpus proceedings. Hoffman v. State, 164 Neb. 679, 83 N. W. 2d 357; Neudeck v. Buettow, 166 Neb. 649, 90 N. W. 2d 254.

It is the rule, also, that the holding of an accused person for trial to the district court at the conclusion of a preliminary examination upon a valid complaint gives that court jurisdiction until he be discharged by due course of law. Dobrusky v. State, 140 Neb. 360, 299 N. W. 539. In the arson case pending against Rhodes in the district court the court not only had jurisdiction by virtue of a bind over but it had jurisdiction from its commencement since the original complaint was filed in that court.

The question posed is whether or not, after the district court acquires jurisdiction of a criminal action, a court of equal or inferior jurisdiction may determine the sufficiency of the evidence adduced at a preliminary examination to hold a defendant for trial to the district court.

The rule is stated in 39 C. J. S., Habeas Corpus, § 53, p. 596, as follows: "Pursuant to a general rule of wide application, on which there is no conflict of authorities, it has been held that a court is without jurisdiction where it attempts by habeas corpus to interfere with the exercise by another court of jurisdiction theretofore acquired, whether such jurisdiction is acquired in another habeas corpus proceeding or on appeal, or otherwise, unless the prior jurisdiction has been terminated." See, also, 25 Am. Jur., Habeas Corpus, § 108, p. 223.

In Peff v. Doolittle, 235 Iowa 443, 15 N. W. 2d 913, the court said: "As valuable and important a right as is the writ of habeas corpus, and as essential as it is in guarding and preserving human liberty, yet, like any other order or judgment of a court, it can be granted only by a court having jurisdiction. Nor can the exercise of this power to grant the writ be used to unsettle valid legal proceedings or to interfere with the exercise of the jurisdiction of other courts."

In State ex rel. Bressman v. Theisen (Mo. App.), 142 S. W. 1088, the court in a similar case said: "Where one court has competent jurisdiction of the person and is proceeding to exercise it, it would be a great outrage upon the administration of justice if a court of equal or inferior jurisdiction should by virtue of the writ of habeas corpus seek to override the jurisdiction of the former by discharging the person and thus annulling its writs and processes and rendering abortive any judgment it might lawfully render."

Other cases to the same effect are: Hart v. Best, 119 Colo. 569, 205 P. 2d 787; Zimmerman v. Angele, 137 Colo. 129, 321 P. 2d 1105; Commonwealth v. Gordon, 197 Ky. 367, 247 S. W. 45; Spurrier v. Spurrier, 111 Okl. 242, 238 P. 956; State v. Callahan, 93 Kan. 172, 144 P. 189.

We necessarily conclude that the district court for Morrill County at all times had jurisdiction of the case charging Rhodes with the crime of arson, and that the county court of Morrill County was without jurisdiction to interfere with or hinder the processes of that court by habeas corpus, or otherwise, during its pendency in the district court. The purported release of Rhodes by the county court was therefore wholly void and of no force and effect.

We find one case in this state which appears to be in conflict with this holding. In Rhea v. State, 61 Neb. 15, 84 N. W. 414, it appears that a county court tested the sufficiency of the evidence on a preliminary hearing by a justice of the peace by habeas corpus. The question of jurisdiction was not raised or decided. We now hold that the inference to be drawn from that case, that a county judge has jurisdiction to test the sufficiency of the evidence of a preliminary hearing after a bind over to the district court for trial, is without support in the law and that the county court is without jurisdiction to so do. In such a case an application for a writ of habeas corpus must be made to the district court.

The defendant contends that the defendant was acting

judicially in the issuance of the bench warrant and was therefore immune from prosecution for contempt. In such a proceeding where the act charged was not committed in the presence of the court the prosecution should be in the name of the state and by information. This method was followed in the case before us. The county court, however, in issuing the bench warrant and complaint for the arrest of Judge Crites did so without a complaint, information, or affidavit being filed, and the issuance of the bench warrant and complaint under such circumstances was wholly void. Leeman v. Vocelka, 149 Neb. 702, 32 N. W. 2d 274; Maryott v. State, 124 Neb. 274, 246 N. W. 343; Harkness v. Hyde, 31 Idaho 784, 176 P. 885. It is argued that although the issuance of the bench warrant was a void act it was a judicial act to which the rule as to judicial immunity applies. The rule as to judicial immunity is stated in 48 C. J. S., Judges, § 71, p. 1038, as follows: "It is well settled that a judicial officer, when required to exercise his judgment or discretion, is not liable criminally for any error which he commits, provided he acts in good faith. However, any judicial officer who acts fraudulently or corruptly is responsible criminally, whether he acts under the law or without the law." See, also, 30A Am. Jur., Judges, § 86, p. 55.

We necessarily conclude that the county court was without jurisdiction in the habeas corpus case in which it purported to release Rhodes on his own recognizance and thereby hinder, delay, and interfere with the jurisdiction of the district court acquired over the person of Rhodes in the arson case. While it is fundamental that a person is not subject to punishment for violating a void order, the defendant proceeded to issue a bench warrant without a complaint, information, or affidavit being filed, a condition precedent to the exercise of jurisdiction in such a case. If such acts were performed in good faith, particularly by a county judge who had not been trained in the law, this court could with pro-

priety give greater consideration to the defense of judicial immunity. But in this case the evidence shows that the defendant, while occupying the office of county judge, collaborated with Rhodes on matters in which Rhodes had a personal interest before and after they were filed in his court. He drafted the bench warrant citing Judge Crites for contempt in Rhodes' law office with Rhodes present and participating. His testimony that Rhodes did not participate other than in the performance of stenographic services is, under the circumstances, difficult to accept. The evidence sustains the conclusion that defendant collaborated with and acted at the direction of Rhodes. To say that such conduct was outside the realm of judicial action is to put it mildly.

Defendant asserts that in issuing the bench warrant he was protecting the jurisdiction of his court against another court that was invading the jurisdiction of the county court. The evidence will not support this assertion. While it is the duty of courts to protect their own jurisdictions, the issuance of a bench warrant for the arrest of the offending judge for contempt is a most unusual method of determining questions of jurisdiction. Such matters can be decided on review by exercising the ordinary processes of the law. The arrest of a judge of a superior court for contempt in such an instance is astonishing to say the least. In fact, in our research we have not been able to find a single instance where an inferior court has ever attempted such a procedure. The defendant clearly acted fraudulently and corruptly, and beyond the jurisdiction of his court, and willfully used the powers of his office to improperly and unlawfully give aid and assistance to one charged with crime in another court having jurisdiction thereof. As was stated in Braatelien v. United States, 147 F. 2d 888: "Judicial title does not render its holder immune to crime even when committed behind the shield of judicial office." We necessarily hold that the defense of judi-

cial immunity is not available to the defendant in the instant case. See Terry v. State, *supra,* wherein it is said that a disclaimer of intention, disrespect, or design to embarrass the due administration of justice is not a defense.

The defendant contends that he purged himself of contempt by withdrawing the bench warrant before it was served, and asserting his good faith performance of the acts with which he was charged. From what we have heretofore concluded, the defendant acted in bad faith. The record shows that when defendant suggested the contempt proceeding to Holscher, Rhodes' attorney, the attorney stated he would have nothing to do with it. He visited two other attorneys who, he admits, gave him no encouragement in such a procedure. Defendant states that he did not intend to contemptuously attempt to obstruct the proceedings or to hinder the due administration of justice in the district court in State v. Rhodes, or to degrade the authority, integrity, and dignity of that court and the judge thereof. We point out, however, the acts done, and the manner of their accomplishment, indicate the purpose of the acts committed more than his assertions of innocence when he is called to account for his acts. While it is true that the bench warrant was not served, it was calculated to create in the minds of the public a disrespect for courts and to lessen respect in the authority, dignity, and integrity of courts generally, and particularly the court toward which it was directed. The defendant well knew that in the dissemination of news the unusual constitutes a fruitful source for news stories, and the defendant was bound to know that a bench warrant for the arrest of a district judge for contempt of the county court was so unusual and scandalous that it would be headlined in the public press. The conduct of the defendant was calculated to destroy all respect for the court, and whether or not it actually accomplished its purpose is immaterial. Cornett v. State, 155 Neb. 766, 53 N. W. 2d 747. With respect

to defendant's contention that he intended no harm, it may be said that in the commission of the acts charged, it will be presumed that he intended the results attained and their natural probable consequences. The test of guilt in a prosecution such as this is not necessarily found in the mental processes by which the defendant attempts to justify his acts. The motive of the defendant and the effect intended are subjects of judicial scrutiny, and evidence, as here, may be sufficient to refute oral testimony of innocence and the asserted intention to exercise a legal right.

Lastly, the defendant contends that the sentence was excessive. We think not. The evidence clearly shows that the contemptuous acts were willful, premeditated, perverse, and contumacious. The evidence is sufficient to sustain the judgment of the district court under the required quantum of proof. The contempt is a most pernicious one and the trial court was justified in imposing the judgment it did to vindicate the dignity of the court and to preserve its authority and integrity.

AFFIRMED.

SIMMONS, C. J., participating on briefs.

SIMMONS, C. J., concurring in result.

I concur in the result.

My disagreement with the opinion goes not to the conclusion but to the use of the quotation from 48 C. J. S., Judges, § 71, p. 1038. It is the foundation for syllabus point five of the court.

The quote goes to criminal liability of a judge for his acts.

Judge McFarland is not here charged with a crime or crimes, but with acts which we have defined as criminal contempts. As to them we have held: "A proceeding for contempt is sui generis and summary in its nature. It partakes of some of the elements of both civil and criminal proceedings but, strictly speaking, it is neither. It belongs to a class of proceedings inherent in the court and deemed essential to its existence." State

ex rel. Beck v. Lush, 168 Neb. 367, 95 N. W. 2d 695, 72 A. L. R. 2d 426.

Beginning at least with State v. DeWolfe, 67 Neb. 321, 93 N. W. 746, in an opinion by Sullivan, C. J., with intervening decisions down to Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227, in an opinion by Carter, J., we have consistently held: "In this state all public offenses are statutory, and no person can be punished for any act or omission which is not made penal by the plain import of a properly enacted statute."

We are not here dealing with a criminal case.

If Judge McFarland is here punishable, it is because he is liable for a criminal contempt and not because he has committed a crime. "Judges are liable for contempts committed by them; * * *." 17 C. J. S., Contempt, § 35, p. 50.

I would apply a rule of law applicable to the facts of this case and the nature of this action. By the use of a citation which goes to criminal law, by inference Judge McFarland is found guilty of the commission of a crime. Judge McFarland was neither charged with, tried for, nor found guilty of a crime.