IN RE APPLICATION OF MELVIN EARL WILSON FOR A WRIT OF HABEAS CORPUS.
MELVIN EARL WILSON, APPELLANT, v. THOMAS S. SOLOMON, SHERIFF OF CASS COUNTY, NEBRASKA, APPELLEE.
111 N. W. 2d 372

Filed October 27, 1961. No. 35043.

*Francis M. Casey,* for appellant.

*James F. Begley,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The petitioner, as relator, sought release and discharge from custody of the respondent Thomas S. Solomon, sheriff of Cass County, by habeas corpus action filed in the district court upon the alleged ground that there was no sufficient or competent evidence adduced at the preliminary hearing that the crime of forcible rape had been committed, or that there was probable cause to believe the relator committed the alleged offense.

At the hearing upon the merits of the habeas corpus action there appears a bill of exceptions of the evidence taken at the preliminary hearing, including a voluntary statement made by the relator to the sheriff about 9:45 a.m., November 8, 1960. Thereupon, the trial court denied the writ and refused to release the relator who, for clarity, will be hereinafter called defendant. Thereafter the defendant's motion for new trial was over-

ruled, and an appeal was taken to this court.

The defendant assigns as error, in substance:  (1) The trial court erred in finding that the evidence adduced at the preliminary hearing was sufficient to hold the accused for trial in the district court; (2) the trial court erred in finding there was sufficient evidence adduced at the preliminary hearing to prove a corpus delicti; and (3) the trial court erred in failing to release and discharge the defendant from custody pursuant to his request for a writ of habeas corpus.

The following rules of law are applicable in the instant case.

In Birdsley v. Kelley, 159 Neb. 74, 65 N. W. 2d 328, this court held:  "The sufficiency of evidence adduced at a preliminary examination to hold an accused to answer for a crime with which he is charged may be raised and tried in habeas corpus proceedings. * * *  In a habeas corpus proceeding instituted for the purpose of testing the sufficiency of evidence taken at a preliminary examination to require a person to be tried on a criminal charge, the court will not weigh the evidence but will only inquire as to the existence of evidence to sustain the charge."

In Gallegos v. State, 152 Neb. 831, 43 N. W. 2d 1, in dealing with a trial on the merits in the district court, we held:  "While a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, it is, nevertheless, competent evidence of that fact, and may, with slight corroborative circumstances, establish the corpus delicti as well as the defendant's guilty participation."  In that opinion we quoted with approval the following from Limmerick v. State, 120 Neb. 558, 234 N. W. 98:  " 'The rule that the corpus delicti cannot be proved by the confession of the defendant is true as a general proposition, yet confessions or admissions may be considered in connection with the other evidence to establish the corpus delicti.  It is not necessary to prove the corpus delicti by evidence entirely

independent and exclusive of the confession or admissions. Groover v. State, 82 Fla. 427; 26 A. L. R. 380; 17 R. C. L. 64, sec. 69.'" Thereafter, citing Egbert v. State, 113 Neb. 790, 205 N. W. 252, Whomble v. State, 143 Neb. 667, 10 N. W. 2d 627, and Clark v. State, 151 Neb. 348, 37 N. W. 2d 601, we said: "This principle has often been reaffirmed by this court."

In Lingo v. Hann, 161 Neb. 67, 71 N. W. 2d 716, we said: "'A preliminary hearing before a magistrate is not a criminal prosecution or trial within the meaning of section 11, art. 1 of our Constitution.' Roberts v. State, 145 Neb. 658, 17 N. W. 2d 666.

"The functional purpose of the preliminary hearing is stated in section 29-506, R. R. S. 1943, as follows: 'If upon the whole examination * * * it shall appear that an offense has been committed and there is probable cause to believe that the person charged has committed the offense, the accused shall be committed to the jail of the county in which the same is to be tried, there to remain until he is discharged by due course of law; * * *.'

"'It is in no sense a trial of the person accused. Its purpose is to ascertain whether or not a crime has been committed, and whether or not there is probable cause to believe the accused committed it.' Roberts v. State, *supra*.

"The effect of the foregoing, if found to exist, is to hold the accused for trial in the district court, which has jurisdiction to try him. See Dobrusky v. State, 140 Neb. 360, 299 N. W. 539." That is what the county court of Cass County did. See Cotner v. Solomon, 163 Neb. 619, 80 N. W. 2d 587.

The record shows that Carol Sindelar is 20 years of age and lives at 1204 South Fourth Street in Plattsmouth; that she is a married woman, separated from her husband; and that she has one child, a little girl, and is expecting another child. This witness works at the Western Electric plant. Her hours are from 3:30

p.m., until midnight. Prior to November 7, 1960, she rode to work with a Mr. Ellingson and other employees of Western Electric. On November 7, 1960, the defendant Wilson took over the transporting of this witness and other employees of Western Electric to and from work. This witness testified that she had not been acquainted with the defendant before that time; that there were two other ladies and Mr. Ellingson who rode with the defendant; and that she did not know what the ladies names were, but she referred to one as Janet and the other as Gertie. They left Plattsmouth about 2:30 p.m. She got off work at midnight. All of the same people rode back to Plattsmouth in the defendant's car, and they drove straight through to Plattsmouth. Gertie was let out first at her home, Mr. Ellingson was let out second, and Janet was let out next. After these people left the car, the defendant drove his car over a hill and started to take her home. Just after they got around the corner about 2 or 3 blocks from her home, the defendant stopped as though something was the matter with the car. There were no houses real close in the vicinity where the defendant stopped the car. She was seated in the back seat of the defendant's 1956 4-door black Ford. The defendant had been seated behind the steering wheel of the car. When the car stopped, it must have been 10 or 15 minutes before 1 a.m. She was unable to remember whether or not the defendant shut off the motor of the car. She did remember that the defendant jumped out of the car and she asked him what the trouble was. He replied that he did not know. The defendant went to the front of the car and looked down, then he went to the back of the car and looked down. He then opened the left rear door of the car and looked in. She said: "What's the matter?" The defendant, by the use of foul and revolting language, informed her he intended to have sexual intercourse with her. She did not realize or know what he was saying, and could not believe him. Then the defendant got

into the car and pushed her over. She started to scream and the defendant put his hands around her throat, pulled her clothes down, and had intercourse with her. She attempted to fight him by struggling, throwing her arms, kicking her legs, and trying to hit him with her purse. The defendant grabbed the purse and threw it on the floor of the car. She was wearing slacks, a girdle, and panties. The defendant pulled her clothes down below her hips. The defendant threatened her, told her not to scream, that he did not want to hurt her, and asked her why she kept saying "no." She further testified that she is 5 feet 3 inches tall and weighs 100 pounds; that she did not consent to having intercourse with the defendant; that she told him at all times to stop; and that she was afraid of him. After the act was completed, the defendant jumped out of the car, got back into the front seat, and drove to within half a block of her home. The defendant said: "You're not going to tell any one, are you?" He said: "Don't tell any one, because if my wife finds out about this * * *." Then he said nothing more. This witness jumped out of the car and ran to her home. She awakened her mother and father and told them what had happened. After she got home her throat was red.

On cross-examination this witness testified that when the defendant stopped his car he pulled over to the right side of the road. She did not remember whether or not he shut off the lights on his car. When he pulled her clothes down he kept one hand against her throat. She was trying to push him away and trying to fight him off. She screamed two or three times "fairly loud." She fought him off all the time, trying to get him away from her, and she was crying. She further testified that she did not "black out," but was close to it, and remained conscious all the time; that she was trying to hit him and was swinging her arms and was bound to hit him sometime but not hard enough to do any good; and that she arrived home about 1:15 a.m.

There is testimony to the effect that when she saw the doctor there were no marks or bruises on her, and there were no marks or bruises on the defendant.

The sheriff testified that he received a report from Mrs. Sindelar's father by telephone close to 3 a. m.; that her father told him that when his daughter arrived home there were marks on her throat; that the father, mother, and daughter came to his office the next morning about 8 a.m.; that after a conference with them he contacted the county attorney who came to his office; and that he sent a deputy to find the defendant and ask him to come to the sheriff's office.

When the defendant arrived at the sheriff's office he made a statement, a part of which we set forth in substance. The defendant stated that he had known Carol Sindelar for several years, but he had not visited personally with her other than when they were riding in the car pool; that he had never asked her for a date during their association in the car pool rides; and that he got out of the driver's side of the car and went to the left rear door and opened it. Carol was sitting on the left side of the back seat. He told her he was going to have intercourse with her. She screamed and started kicking. He had his hands around her waist and pushed her down on the seat. He used both of his hands to pull her clothing down. Prior to the time the act of intercourse was finally consummated, Carol stopped fighting. After completing the act, he told her not to tell anyone about the incident. He had never touched any part of Carol's body prior to that time.

In the light of the evidence heretofore set forth and the authorities cited here, we conclude that the judgment of the trial court should be and is hereby affirmed.

AFFIRMED.