IN THE MATTER OF MARTIN L. PAGLIUGHI, AN AT-
TORNEY AT LAW AND FORMER MAGISTRATE OF THE
MUNICIPAL COURT OF BUENA VISTA TOWNSHIP,
ATLANTIC COUNTY, RESPONDENT.

Argued February 5, 1963—Decided March 18, 1963.

On order to show cause why respondent should not be disciplined.

For the order: *Mr. Augustine A. Repetto.*

For the respondent: *Mr. David L. Horuvitz.*

The opinion of the court was delivered by

SCHETTINO, J. We issued an order to show cause, dated May 3, 1962, why respondent, a former magistrate, should not be disbarred or otherwise disciplined and why he should not be held in contempt of the Supreme Court for violating *Canon* 28 of the *Canons of Judicial Ethics* which provides:

"28. Partisan Politics.

"While entitled to entertain his personal views of political questions, and while not required to surrender his rights or opinions as a citizen, it is inevitable that suspicion of being warped by political bias will attach to a judge who becomes the active promoter of the interests of one political party as against another. He should avoid making political speeches, making or soliciting payment of assessments or contributions to party funds, the public endorsement of candidates for political office and participation in party conventions.

He should neither accept nor retain a place on any party committee nor act as a party leader, nor engage generally in partisan activities."

*R. R.* 1:25 makes the *Canons of Judicial Ethics* govern the conduct of our judges, and *R. R.* 8:13–7 makes the Canons apply to magistrates as well.

Respondent is a member of the bar and had been Magistrate of Buena Vista Township from February 15, 1952, through February 26, 1962. Pursuant to an order of the Supreme Court, dated January 2, 1962, hearings were held by a Superior Court Judge on February 16, 20 and April 2, 1962, directed towards the following: (1) whether respondent was a political ward leader in the City of Vineland, or recognized as such; (2) his association and relationship with the Vineland Young Men's Republican Club of Cumberland County; (3) whether he had permitted the use of his home for the registration of voters; (4) whether he had been involved in alleged voter registration frauds; (5) whether he attended or participated in functions likely to be considered political, and in particular a certain function held at Sea Girt, New Jersey, on August 15, 1961, at which the Republican gubernatorial candidate and other candidates and party leaders from Cumberland County were in attendance; (6) whether he had signed and notarized petitions of candidates for members of the Republican Executive Committee; and (7) whether written statements which he made to the Administrative Director just before the order of January 2, 1962, were false and misleading.

The judge found (1) that respondent was in fact the ward leader of the sixth ward of Vineland from 1952 to 1955 and was probably recognized thereafter as the leader of this ward by persons uninformed politically, but found no direct evidence that respondent had done anything affirmatively in that connection since 1955; (2) that respondent was actively associated with the Vineland Young Men's Republican Club of Cumberland County from 1952 through 1955, although for a certain period of time it may have been in name only; (3) that respondent did in fact permit members of the Cumberland County Board of Elections to use his home for the purpose of registering voters in October 1955, at which time ap-

proximately 100 persons were registered during two or three evenings, and that he also assisted members of the Board of Elections by filling out questionnaires and obtaining signatures; (4) that the evidence did not support a finding that respondent was involved in any voter registration frauds; (5) that respondent attended the meeting of August 15, 1961, at Sea Girt, which, respondent admitted, was definitely political in nature; and (6) that respondent when he signed and notarized petitions of candidates for Republican members of the Executive Committee, did, in fact, engage in political activity. The judge made no clear finding as to the seventh item. Thereafter, on the basis of the hearings and the findings, we issued the order to show cause.

Respondent was appointed Magistrate of Buena Vista Township on February 15, 1952, for a term of three years and was reappointed for successive terms, the last reappointment for a term expiring February 15, 1964. He resigned on February 13, 1962, effective February 26, 1962.

Respondent is also engaged in practice in Vineland, New Jersey. He is City Solicitor of the City of Vineland, having been appointed July 1, 1960, for a term of four years. He has lived in the City of Vineland during his entire life, and since 1951 or 1952, he has resided with his family in the sixth ward of the city. Respondent was a founder of the Vineland Young Men's Republican Club of Cumberland County in 1952 and served as its first president. He was Assistant Prosecutor of Cumberland County from 1953 to 1957. He was State President of the New Jersey Junior Chamber of Commerce during the years 1953–1954. In varied degrees he has been otherwise active in the civic, public and political life of his community. In 1953 he received the Vineland Outstanding Citizen Award.

Respondent admits that while a magistrate he had been a ward leader in the City of Vineland until 1953 or 1954 and had been associated with the Vineland Young Men's Republican Club until November of 1955. But, he contends, all of these activities were limited geographically to the City of

Vineland, Cumberland County, which is situated 10 miles from the municipal court and in another county. Moreover, he claims, the exhaustive investigation failed to yield one instance where these activities influenced or otherwise affected the operation of his court in Buena Vista Township.

As for the use of respondent's home for registration of voters, respondent contends that this activity did not involve partisan politics on his part and was not within the bar of *Canon* 28 as there is no indication that any prospective voter at the time of registration was asked any questions concerning partisan party affiliation. Furthermore, he claims that the testimony absolves him from any charge of voter registration frauds.

Respondent explains his attendance at the political meeting at Sea Girt on August 15, 1961, as a response to "the normal ambition of every lawyer," or to "the usual ambition of every normal lawyer," to become a judge of his county.

As to respondent's signing and notarizing petitions of candidates for the Republican Executive Committee, he contends that although this was found to be a political activity, a fine line of distinction must be drawn between signing and notarizing a petition. He characterizes the latter as merely the performance of a perfunctory act; the jurat confirms the taking of an oath and verifies its contents but does not constitute an endorsement of them by the one taking the oath. However, respondent admits that when he signed petitions as a voter endorsing candidates for the Republican County Executive Committee from the district of his residence his action is susceptible of criticism. We assume he means that his activity was political.

Respondent, in summary, maintains that aside from the Sea Girt incident in 1961 and his signing of petitions of candidates for members of the Republican Executive Committee, a fair appraisal of the record demonstrates that there was a cessation of political activities after November 14, 1955, and that most of the activities forming the basis for the order to show cause are in the gray area between permis-

sible and forbidden behavior. Moreover, respondent continues in his assertion that he believed the prohibition of *Canon* 28 only applied to the locality in which he sat as magistrate. He concedes that he used poor judgment but urges that to warrant the severity of discipline by way of disbarment, suspension or reprimand, an element of wilfullness or an intentional flouting of the Rules must exist and this is lacking.

## I.

The interrelationship of law and politics is not only inevitable, but desirable. We recently told newly admitted attorneys that:

"There are few callings which offer the opportunity for public service which will be yours. The Bar has an unequalled record of devotion to the public good. There is nothing coincidental about the lawyer's pre-eminence in public affairs; it follows inevitably from his training and the traditions which each generation at the Bar has received, enriched, and passed on to the next."

On another occasion we quoted Alexis de Tocqueville's statement: "I cannot believe that a republic could subsist at the present time if the influence of lawyers in public business did not increase in proportion to the power of the people." *Democracy In America* 173 (Oxford Univ. Press 1947). The late Chief Justice Vanderbilt suggested, as one of the five functions which a great lawyer had to possess, that every lawyer must be prepared to answer the call for public service.

But, we are not here dealing with a citizen or a lawyer as such; we are dealing with a lawyer who has become a member of the judiciary. The committee of the American Bar Association which prepared the Canons was headed by Chief Justice William Howard Taft and other outstanding leaders of the bench and bar, many of them politically prominent. American Bar Association, *Canons of Professional and Judicial Ethics* ix (1957). They sponsored and drafted the prohibitions found in the Canons, which we incorporated into our rules in 1948 (*Rule* 1:7–6).

██ Once a lawyer becomes a judge, his activities are restricted in great part. For example, the following opinions interpreting *Canon* 28 have been rendered by the American Bar Association's Committee on Professional Ethics and Grievances.

"Opinion 113—A judge should not appear at political meetings and indicate support of candidates for office; nor should he permit his wife to give political teas.

Opinion 193—A judge should not make political speeches, endorse candidates, hold place on party committee, or engage generally in partisan politics. He cannot act as party treasurer." American Judicature Society, *Handbook For Judges* 14 (1961).

Additionally, Chief Justice Weintraub, referring to requests to members of the judiciary for contributions to political parties, on July 13, 1959, quoted *Canon* 28 and thereafter stated:

"Political contributions are accordingly prohibited. I am as sympathetic as you probably are to the general proposition that political parties, being indispensable to the effective operation of our system of government, well merit the support of all citizens, but experience has demonstrated that the independence and integrity of the judiciary are best served by total divorcement from the political scene. The Canon accepts that thesis, and is binding upon each of us."

These rulings are consistent with that part of *Canon* 28 which states: "it is inevitable that suspicion of being warped by political bias will attach to a judge who becomes the active promoter of the interests of one political party as against another."

## II.

Considering merely those activities which respondent concedes were clearly and admittedly political (respondent's attendance at and participating in the Sea Girt meeting), we now turn to the record in these proceedings to assess his assertion that he believed the proscription of *Canon* 28 did not extend beyond Buena Vista Township.

524 

On June 8, 1954 the Administrative Director transmitted the following to all judges and magistrates:

"The Supreme Court has recently had called to its attention several instances of judges attending functions of a political nature. So that there may be no misunderstanding on the subject, the Supreme Court has requested me to call the attention of each judge to Canon 28 of the Canons of Judicial Ethics. The Supreme Court, moreover, would like me to state that this Canon is to be broadly interpreted and that in its opinion it extends to and prohibits participation in or attendance at all political or quasi-political functions, meetings and dinners including testimonials in honor of persons who are politically active, since invariably in the public mind such occasions are considered political in nature.

If in any situation a judge should be in doubt as to the propriety of his engaging in a particular activity or attending a particular function, the Supreme Court would strongly suggest that the doubt be resolved by refraining from participation or attendance."

On June 16, 1954 respondent sent a letter to the Administrative Director of the Courts which stated:

"I received a communication of June 8th relevant to Judges attending political functions and participating in politics.

I would like to have a ruling from .you as to whether or not it is permissible to participate in politics in the County where I reside. However I am a Municipal Court Judge in Atlantic County and do not vote nor reside there. Therefore I see no reason or harm done in participating in local politics in Cumberland County where my legal voting residency is. However I do agree that participating in politics in Atlantic County would not be ethical.

For the past two years I have served as Municipal Court Judge of Buena Vista Township which is in Atlantic County and I live and reside in Cumberland County and do participate in politics there.

I would appreciate a ruling from you on whether or not in your opinion it would be ethical."

In an answer thereto, dated July 2, 1954, the Director replied that he had discussed the matter with the Supreme Court at its last conference, and that the court was of the opinion, and had requested the Director to advise respondent, "that the Canons of Judicial Ethics prohibit your participating in politics, not only in the county in which your court is located but also in any other county."

At our direction the Director, by letter dated September 8, 1961, asked respondent to explain an enclosed newspaper clipping, sent anonymously to the Director's office, which referred to respondent's presence at the Sea Girt meeting and to his alleged position as sixth ward leader of Vineland. Respondent replied on September 15, 1961, that he was unaware that his attendance at a political meeting for a State level candidate would have any bearing on his status as magistrate. He also denied that he was ward leader or that he held office in any political party. We found the explanation difficult to understand in view of the 1954 correspondence in which respondent made inquiry on this very point. Respondent was so informed by the Director in a letter dated October 5, 1961, in which he enclosed copies of the correspondence and conveyed this court's request for an explanation. The explanation came in a letter dated October 25, 1961:

"I have your letter of the 5th relevant to my correspondence of June 16, 1954, and your answer thereto, dated July 2, 1954.

At the time my letter of June 16, 1954, was dictated, I was being asked to run for the State Senate. I was considering the acceptance of the nomination and wanted clearance from your office to proceed along those lines politically. During the period from the date of my dictation of the said letter and our receipt of your reply thereto, I had already decided not to engage in the activity of running for State Senator and, actually, I do not even recall receiving your letter of the 2nd of July, 1954.

From that time to the present, I have not been participating in politics and have not had any cause to have this question brought to my mind. I am not active in political work, either in or out of the County in which I preside. The luncheon which brought this question to light of my participation in politics was attended by me more or less along the social line and not because I was engaged in political activity. I shall not attend any such meetings in the future."

Although respondent claimed in 1961 that he had no recollection of receiving the letter of July 2, 1954, he admits receiving directives pertaining to the conduct of his office; admits having the manual and the *Canons of Judicial Ethics,* particularly *Canon* 28, and also admits that he was prohibited

from engaging in any political activity while a magistrate of Buena Vista Township "when it was brought to my attention about 1953 or 1954 * * *." Yet, at the conclusion of the present hearings, respondent reasserted that it was his understanding that the restriction concerning political activity applied only to the location in which he was acting as municipal magistrate, namely Buena Vista Township. This position is completely contrary to his own view, as expressed in a letter dated November 14, 1955, in which he submitted his resignation as a member and as president to the Vineland Young Men's Republican Club, expressing his regret that he could not be active in the organization "due to a Supreme Court ruling in which Municipal Court Judges cannot engage in politics."

[2–4] We are forced to the conclusions that respondent, ever since the 1954 correspondence with the Administrative Director, knew that a magistrate was barred from political activities and nonetheless acted contrary to the mandate of *Canon* 28. That a magistrate may be disciplined as an attorney and may be found guilty of contempt if as magistrate he disobeys the rules of the Supreme Court are clear. *In re Mattera*, 34 *N. J.* 259, 269, 273 (1961). Therefore, a penalty must be administered.

We are confronted with the problem of the *quantum* of punishment. Respondent's violations warrant discipline in a measure greater than we order. But we note that this is the first case involving a violation of *Canon* 28. Therefore, respondent will be reprimanded. This is not to be taken as the measure of future discipline for others who might violate *Canon* 28. *Cf. In re L. R.*, 7 *N. J.* 390, 393 (1951).

Respondent is accordingly reprimanded.

*For verdict of guilty and reprimand*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.