440 So.2d 446 (1983)
STATE of Florida, ex rel., Alan R. SCHWARTZ, Joseph Nesbitt and Natalie Baskin, As Judges of the District Court of Appeal of Florida, Third District, Petitioners,
v.
Dick C.P. LANTZ, Judge of the Circuit Court of Florida, Eleventh Judicial Circuit, Respondent.
No. 82-739.
District Court of Appeal of Florida, Third District.
November 1, 1983.
*447 Robert A. Ginsburg, County Atty., and Roy Wood, Asst. County Atty., for respondent.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
PER CURIAM.
This court issued a rule to show cause to Circuit Judge Dick C.P. Lantz to show why he should not be found in contempt for willfully violating its order staying proceedings in DuBois v. DuBois, 412 So.2d 23 (Fla. 3d DCA 1982).
The underlying facts are as follows: Judge Lantz was presiding over a domestic proceeding involving Robert DuBois and Gay DuBois. On February 22, 1982, the judge entered an order finding Mr. DuBois in contempt of court for failure to pay temporary support. Notice of appeal from the contempt order was filed with this court on March 2, 1982. Subsequently, the husband's motions for stay were denied in the trial court and he filed an emergency motion for stay pending review in this court. On March 5, 1982, we issued the stay order which commanded:
Following review of appellant's emergency motion for stay pending review, it *448 is ordered that said motion is granted and the orders of the circuit court dated February 22, 1982 and March 5, 1982 are hereby stayed pending further order of this court. This cause is set for hearing on the emergency motion for stay, on Tuesday, March 9, 1982 at 10:30 o'clock A.M.
A decision was rendered March 23, 1982. In that opinion, we reversed the trial court contempt order because it did not contain the requisite finding of a willful failure to pay, notwithstanding a present ability to do so, as required by Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976); DuBois v. DuBois, 412 So.2d 23 (Fla. 3d DCA 1982).
During the pendency of the appeal, Judge Lantz conducted a hearing at which time the wife sought to amend the order adjudicating the husband in contempt so that it would properly reflect the fact that he had a present financial ability to pay temporary support. The transcript of that hearing unequivocally demonstrates that Judge Lantz was made aware that our stay order was in effect. Despite this fact, on March 22, 1982, he entered an order amending his prior order of contempt so as to include the findings required by Faircloth. At the husband's request, we summarily quashed the amended order but nonetheless issued a rule to show cause why Judge Lantz should not be held in contempt of this court for the purpose of protecting the power of the court with respect to matters properly before it. Judge Lantz has filed a response asserting three defenses.
First, he argues that he should not be held in contempt because he did not intend to violate this court's stay order but rather his actions resulted at most, from confusion with regard to the effect of a stay. To support the fact that he lacked the requisite intent, Judge Lantz relies upon a statement that he made at the hearing that "I believe that this court has the power to do so and so rule."
In Ex parte Biggers, 85 Fla. 322, 95 So. 763, 769 (1923), the court stated:
If the charges duly made are admitted to be true, and they clearly constitute contempt whether so intended or not, appropriate punishment follows. If the matters charged and admitted to be true are ambiguous or do not clearly constitute contempt, and an intent to offend is duly denied under oath, a discharge from custody follows.
See also Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185 (1932). Thus, if the stay order which was violated was clear as to its effect and operation, proof of intent is unnecessary. Cf. Department of Health & Rehabilitative Services, Division of Mental Health, South Florida State Hospital v. State, 338 So.2d 220 (Fla. 4th DCA 1976) (where order violated was confusing and ambiguous in its operation, proof of contemptuous intent is required).
Judge Lantz relies on Waltham A. Condominium Ass'n v. Village Management, Inc., 330 So.2d 227 (Fla. 4th DCA 1976) to reflect the confusion surrounding this area of the law. That decision, while admitting a prior uncertainty, clarified the effect of a notice of appeal upon a court's order.[1] In the absence of a stay, it concluded that:
[T]he trial court has full authority or jurisdiction to "proceed" while the appeal is pending, even as to the "subject matter" of the appeal, and short of final hearing and disposition on the merits such authority or jurisdiction is limited in one, and only one, very specific sense: the trial court may not alter, amend, rescind or act in such a way with respect to its previous ruling or order as will frustrate the exercise of the appellate court's jurisdiction or render moot its labors.
330 So.2d at 233. Where a stay has been entered, the court added, there was a further limitation upon the trial court's power: It could not enter an order tending to extend or enforce the order appealed. Since *449 Waltham, every district court in this state has, at least once, vacated a trial court order because it altered a judgment on appeal.[2]Bleemer v. Bleemer, 436 So.2d 273 (Fla. 3d DCA 1983); FMS Management Systems, Inc. v. IDS Mortgage Corp., 402 So.2d 474 (Fla. 4th DCA 1981); Owen v. Wilson, 399 So.2d 498 (Fla. 5th DCA 1981); Ponzoli v. Hawkesworth, 390 So.2d 784 (Fla. 3d DCA 1980); Blum v. Blum, 382 So.2d 52 (Fla. 3d DCA 1980); Alarm Systems of Florida, Inc. v. Singer, 380 So.2d 1162 (Fla. 3d DCA 1980); Edward J. DeBartolo Corp. v. Dryvit Systems, Inc., 368 So.2d 85 (Fla. 2d DCA 1979); Gross v. Simanonok, 366 So.2d 47 (Fla. 2d DCA 1978), cert. denied, 376 So.2d 75 (Fla. 1979); Wells v. State, 362 So.2d 441 (Fla. 4th DCA 1978); General Portland Land Development Co. v. Stevens, 356 So.2d 840 (Fla. 4th DCA 1978); State ex rel. American Home Insurance Co. v. Seay, 355 So.2d 822 (Fla. 4th DCA), cert. denied, 361 So.2d 835 (Fla. 1978); Stack v. Okaloosa County, 347 So.2d 145 (Fla. 1st DCA 1977).[3]
From these decisions then, we can reach no other conclusion but that our stay order unambiguously defined the parameters of the trial court's power with respect to its previously-entered order. It cannot be disputed that the effect of Judge Lantz' modification was to frustrate the exercise of our appellate court's jurisdiction. Since, by so doing, the Judge has violated an express, unambiguous order of this court, actual proof of intent is unnecessary because it may be inferred from his actions. See Ex parte Biggers, 11 Fla.Jur.2d Contempt § 17 (1979). Accordingly, Judge Lantz' reliance on his statement at the hearing to indicate his lack of intent, will not aid him under the present circumstances.
Next, Judge Lantz asserts that a judge may not be held in contempt on the basis of a judicial ruling made by him. The power to hold a judge in contempt was traced to its English source in In re Mattera, 34 N.J. 259, 168 A.2d 38, 45 (1961):
There can be no doubt that a judge of an inferior court may be attached for disobedience of a direct order of a superior court. State v. Hunt, 1 N.J.L. 287 (Sup. Ct. 1795). Blackstone (Book IV, p. 284) states the principal instances usually punished by attachment included:
"1. Those committed by inferior judges and magistrates; by acting unjustly, oppressively or irregularly, in administering those portions of justice which are intrusted to their distribution: or by disobeying the king's writs issuing out of the superior courts, by proceeding in a cause after it is put a stop to or removed by writ of prohibition, certiorari, error, supersedeas (a command to stay or forbear doing that which ought not to be done), and the like. For, as the king's superior courts, and especially the court of king's bench, have a general superintendence *450 over all inferior jurisdictions, any corrupt or iniquitous practices of subordinate judges are contempts of that superintending authority whose duty it is to keep them within the bounds of justice." (emphasis added)
See also In re Fite, 11 Ga. App. 665, 76 S.E. 397 (1912); McFarland v. State, 172 Neb. 251, 109 N.W.2d 397 (1961); In re Pagliughi, 39 N.J. 517, 189 A.2d 218 (1963); State ex rel. Walker v. Giardina, 294 S.E.2d 900 (W. Va. 1982); 46 Am.Jur.2d Judges § 85 (1969); 17 C.J.S. Contempt § 35 (1963). Consequently, we reject Judge Lantz' contention that, because of his office, he is immune from our contempt powers.
Once these impediments to our holding the judge in contempt have been removed, the only defense available to him is the fact that our inherent contempt powers are to be exercised with care and circumspection. He relies on State v. Clemmons, 150 So.2d 231, 234 (Fla. 1963) wherein the court stated:
The power to find a grand jury in contempt because of the contents of its report should be exercised with great caution and only in extreme cases. The rule is that the power to adjudge anyone in contempt is always to be exercised with care and circumspection. South Dade Farms v. Peters, Fla., 88 So.2d 891. Ordinarily, expunging the report from the court records should suffice to remedy the evil of an obnoxious and objectionable report.
From this, Judge Lantz argues that the supervisory power of the district courts of appeal is so complete as to render unnecessary the use of the contempt power against a judge of the lower court. While it is true that we vacated the erroneouslyentered order, this only served to protect the interests of the parties. Contempt proceedings, by their very nature, are utilized to vindicate the power of the court. See Ex Parte Earman, 85 Fla. 297, 95 So. 755 (1923). As the court so aptly stated in Demetree v. State, 89 So.2d 498, 501 (Fla. 1956):
[T]he power to punish for violation of a valid subsisting order of a court of competent jurisdiction necessarily inheres in our judicial system. This is so for the simple reason that without the power our judicial system would become a mere mockery for a party to a cause could make of himself a judge of the validity of orders which had been issued and by his own acts of disobedience set them aside, thereby ultimately producing the complete impotency of the judicial process.
Just as Judge Lantz has a right to expect that attorneys and parties before him will respect his orders until reversed or vacated, we, as the court created by the constitution for the purpose of supervising the lower court, are entitled to the same obedience.
Our responsibility under the circumstances before us is buttressed by the Florida Bar Code of Judicial Conduct, Canon 3(B)(3) which provides:
A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware.
Based on the foregoing, we find that we have the power and the justification for holding Judge Lantz in contempt. However, in the exercise of our discretion and with the assurance from Judge Lantz that he will not again act so imprudently, we proceed no further.
In summary, we observe that judges are not subject to contempt citations solely by reason of acting in excess of their jurisdiction; or by entering an erroneous ruling or one that is the result of misunderstanding, inadvertence, or confusion. As evidenced by this opinion, a judge is ordinarily subject to contempt only where he acts contrary to an unambiguous order of which he has been made aware.
Finally, we observe that judges subject to the appellate jurisdiction of this court should not, by reason of this opinion, be hesitant to employ their complete and paramount authority in the exercise of their jurisdiction. To the contrary, this opinion *451 should serve to remind judges as well as attorneys of the respect and obedience due orders entered under a legitimate exercise of authority.
The order to show cause is discharged.
BASKIN, Judge (concurring specially).
Although I concur in the result reached by the majority, I am unable to agree with the reasoning upon which the opinion is founded. While I agree that the trial judge improperly acted in excess of his jurisdiction, I am not convinced that his conduct rose to the level of criminal contempt.
The trial court's conduct consisted of amending an order while it was the subject of an appeal and the object of a stay by this court. By amending the order, the trial court brought its original order into conformity with existing law. The court supplied the necessary finding of ability to pay which it had omitted from its earlier order adjudging a husband in contempt; it did not attempt to enforce the order. The trial court's amendment anticipated our opinion released the next day quashing the order.
Because counsel reminded the trial court of the existence of our stay order, and there could be no question that the court was cognizant of our directive prior to ordering the amendment, we issued a rule to show cause why the trial court should not be held in contempt for violating our stay order. It appeared to us that the trial court's disregard of our stay constituted willful disobedience. In response, however, the trial judge advised us that he was confused about the law. He maintained that the violation was an error and that his conduct was not designed to hinder or embarrass this court.
Although proceedings undertaken by trial courts on matters pending before an appellate court generally result only in reversal or vacation of their improper orders, the majority concludes that in this case the trial court's actions also constituted contempt of court. The majority holds that proof of intent is unnecessary because the trial court violated a clear and unambiguous order. The supreme court has ruled, however, that evidence of intent to disobey an order is a necessary component of contempt. Florida Ventilated Awning Co. v. Dickson, 67 So.2d 218 (Fla. 1953); Young v. Miami Beach Improvement Co., 46 So.2d 26 (Fla. 1950).
The majority cites several cases vacating trial court orders entered or altered while appeals were pending, stating that Waltham A. Condominium Ass'n v. Village Management, Inc., 330 So.2d 227 (Fla. 4th DCA 1976) clarified the effect of a notice of appeal and eliminated confusion. The number of opinions issued subsequent to Waltham, however, suggests that the permissible scope of judicial activity during the pendency of an appeal is not entirely clear. Nevertheless, in none of these cases was the trial judge held in contempt. In fact, the majority cites no Florida case holding a trial judge in contempt.
Contempt is an "exhibition of scorn or disrespect toward a court... ." 11 Fla. Jur.2d Contempt § 1. It is defined as an offense against the authority or the dignity of a court and consists of any act calculated to lessen the authority of the court or dignity or "calculated to embarrass, hinder, or obstruct a court in the administration of justice... ." Thomson v. State, 398 So.2d 514 (Fla. 3d DCA 1981). Contempt involves more than an error in applying the law.
There are circumstances in which a trial judge may be held in contempt of an appellate court's order, but violation of a stay order without proof of intent to flout the authority of this court or to show disrespect is insufficient to establish contempt. It is the challenge to the authority or dignity of the court rather than the error of judgment that constitutes contempt. In re Mattera, 34 N.J. 259, 168 A.2d 38 (1961); McFarland v. State, 172 Neb. 251, 109 N.W.2d 397 (1961). The trial court's statement that "I believe that this court has the power to do so and so rule" demonstrates ignorance of the law rather than disrespect for this court. Of course, continued failure to abide by our orders cannot in the future be explained as "confusion."
*452 In conclusion, I find that the trial judge's conduct in failing to apprise himself of the limits of his jurisdiction constituted a disservice to the litigants and to counsel. The public does not benefit, however, from a rule which will inhibit the free exercise of a trial judge's lawful deliberations by subjecting him to the threat of punishment for his errors in deciding legal questions. Despite the majority's assertions to the contrary, I believe that threat to be implicit in today's opinion and I therefore decline to join in the majority view.
NOTES
[1] While Waltham involved an interlocutory appeal, it is clear from the citations which follow in the body of this opinion that the rule is equally applicable where a final judgment has been entered. See e.g., FMS Management Systems, Inc. v. IDS Mortgage Corp., 402 So.2d 474 (Fla. 4th DCA 1981).
[2] Of course, there were also decisions to this effect prior to Waltham. See e.g., Kalmutz v. Kalmutz, 299 So.2d 30 (Fla. 4th DCA 1974); Liberman v. Rhyne, 248 So.2d 242 (Fla. 3d DCA), cert. denied, 252 So.2d 798 (Fla. 1971); Fulton v. Poston Bridge & Iron, Inc., 122 So.2d 240 (Fla. 3d DCA), cert. denied, 125 So.2d 879 (Fla. 1960); Florida Dry Cleaning & Laundry Board v. Everglades Laundry, Inc., 138 Fla. 646, 190 So. 33 (1939).

It should also be noted that this rule is of universal application; apparently no jurisdiction holds otherwise. Thus, it was said in United States v. Katsougrakis, 715 F.2d 769, 776 (2d Cir.1983):
The district judge erred by engaging in factfinding after notice of appeal had been filed. It is well settled that the filing of a timely and effective notice of appeal from a final judgment divests the court of jurisdiction to amend or otherwise reconsider that judgment. See Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A., 527 F.2d 966, 972-73 (2d Cir.1975), cert. denied, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); 9 J. Moore, B. Ward, J. Lucas, Moore's Federal Practice ¶ 203.11 (2d ed. 1983). (footnote omitted)
[3] The lack of jurisdiction in a trial court to modify a final judgment being appealed also renders it without jurisdiction to entertain a motion pursuant to Florida Rule of Civil Procedure 1.540(b). Walker v. Walker, 401 So.2d 872 (Fla. 2d DCA 1981); Tosar v. Sladek, 393 So.2d 61 (Fla. 3d DCA 1981); Glatstein v. City of Miami, 391 So.2d 297 (Fla. 3d DCA 1980); Leo Goodwin Foundation, Inc. v. Riggs National Bank of Washington, D.C., 374 So.2d 1018 (Fla. 4th DCA 1979); Weinschel v. Weinschel, 368 So.2d 388 (Fla. 3d DCA 1979).